851 P.2d 132

**TUCSON ELECTRIC POWER COMPANY, Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.**

**No. 1 CA–TX 91–004.**

Court of Appeals of Arizona, Division 1, Department T.

Oct. 8, 1992.

Review Denied May 18, 1993.

Fennemore Craig, P.C. by Timothy Berg, John D. Everroad, Diane M. Evans, Phoenix, for plaintiff-appellant.

Grant Woods, Atty. Gen. by Gail H. Boyd and Patrick Irvine, Asst. Attys. Gen., Phoenix, for defendant-appellee.

## OPINION

HAIRE, Judge.

Tucson Electric Power Company (taxpayer) has appealed from a summary judgment sustaining deficiency assessments against it in excess of $1.2 million for the tax years 1980 and 1981. The deficiency assessments resulted from the Arizona Department of Revenue's disallowance of accelerated depreciation deductions taken by the taxpayer pursuant to former A.R.S. § 43–1030 relating to the installation of pollution control equipment in New Mexico.[1]

The issues presented on appeal require that we first examine A.R.S. § 43–1030 to determine the statutory requirements for accelerated amortization eligibility. Once we determine the requirements imposed by the statute, issues are then presented concerning whether the facts show reasonable compliance by the taxpayer with the statutory requirements, or, if not, whether, by reason of the combined conduct of the Arizona Department of Revenue and the Arizona Department of Health Services, the state is estopped to deny compliance.

We now consider the conflicting interpretations of A.R.S. § 43–1030 urged by the state and the taxpayer.

1. A.R.S. § 43–1030 was initially codified as § 43–123.02. Subsequent to the assessments in question, the statute was renumbered and amended so as to transfer the certification responsibilities from the Department of Health

INTERPRETATION OF A.R.S. § 43–1030

At all times material to this litigation, A.R.S. § 43–1030 provided:

A. Any taxpayer may elect to amortize the adjusted basis of any device, machinery or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants based upon a period of sixty months. In computing taxable income, such amortization shall be allowed as a subtraction ratably over the period allowed under this subsection beginning with the month in which such device, machinery or equipment is completed or acquired and is placed in service by the taxpayer. This election shall be indicated by the taxpayer in an appropriate statement in the taxpayer's income tax return for the taxable year of the acquisition or completion and placement in service of such devices, machinery or equipment. An election to discontinue amortization with respect to the remainder of the amortization period is permitted and shall be indicated by an appropriate statement on the taxpayer's income tax return for the taxable year of discontinuance.

B. If the taxpayer does not elect to amortize pursuant to subsection A of this section, there shall be allowed a deduction for normal exhaustion, wear and tear of property. The amount of such deduction shall be computed pursuant to the provisions of § 167 of the Internal Revenue Code.

C. In determining the adjusted basis for the purposes of subsection A of this section, such device, machinery or equipment upon certification by the Department of Health Services as a device, machinery or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants shall include only an amount that is properly attributable to the construction, reconstruction, remodeling, installation or acquisition of such device, machinery or

Services to the Arizona Department of Environmental Quality. Throughout this opinion we will refer to the statute as it existed when codified as A.R.S. § 43–1030.

equipment as certified by the Department of Health Services.

## A. Is the accelerated amortization limited to in-state pollution control equipment?

■ Although some of the provisions of A.R.S. § 43–1030 are ambiguous, the overall purpose of the enactment is clear. By providing for accelerated amortization of the cost of pollution control equipment, the legislature intended to give Arizona taxpayers, such as the taxpayer in this case, an incentive to install such equipment. The state has contended that the accelerated amortization allowed by A.R.S. § 43–1030 is limited to in-state pollution control equipment.[2] Thus, in its notice disallowing the taxpayer's election of accelerated amortization, the Department of Revenue partly based the disallowance on the department's conclusion that "only pollution control equipment based in Arizona" is eligible for the accelerated amortization authorized by A.R.S. § 43–1030. This is the interpretation that the Arizona Department of Health Services had consistently urged. Based on this interpretation, the Department of Health Services had previously advised the taxpayer that it would not issue any certification relating to the taxpayer's out-of-state pollution equipment. Opposing this view, the taxpayer contends that the accelerated depreciation provisions of the statute apply equally to in-state and out-of-state pollution control equipment.

In considering this issue, the tax court stated that it found nothing in the statute to preclude a taxpayer from obtaining the accelerated amortization merely because the equipment was installed in a plant located outside Arizona. We agree. Subsection A of A.R.S. § 43–1030 provides: "Any taxpayer may elect to amortize the adjusted basis of any device, machinery or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants based upon a period of sixty months." There is no territorial limi-

tation expressly set forth in the statute, nor any other provisions of the statute from which such a limitation can be implied. We therefore conclude that the Department of Revenue's rejection of the taxpayer's accelerated amortization election cannot be sustained on that basis.

## B. Does the statute require certification by the Arizona Department of Health Services?

■ Our discussion of this question is limited to a consideration of the requirements imposed by the statute. We will consider at a later point in this opinion the taxpayer's argument that the state is estopped to deny the efficacy of certification by the New Mexico Environmental Improvement Agency. We agree with the tax court's analysis and conclusion that the statute requires certification by the Department of Health Services. On this point, the statute is clear. As stated by the tax court:

> While the statute may not be a model of legislative clarity, it appears clear to the Court that the legislature intended to permit the accelerated amortization of certain pollution control devices. The legislative grant is limited only to that portion of the cost of those devices attributable to the favored function, and is further limited by the requirement that the Department of Health Services certify those devices.

. . . . .

In addition to providing for a deduction intended to favor the installation of pollution control devices, the Court holds that A.R.S. § 43–1030(C) imposed a duty on the Department of Health Services. The Department was obligated to provide the certification required to justify the deduction if, in fact, the device was as described in A.R.S. § 43–1030. That duty devolved on the Department of Health Services no matter where the devices were located.

---

**2.** In this opinion, the phrase "pollution control equipment" includes all pollution control items

described in A.R.S. § 43–1030.

We conclude that the Department of Health Services violated the duty imposed on it by the statute when it refused to consider certification of the taxpayer's out-of-state pollution control equipment.

## C. Does the statute require certification relating to the cost of the equipment as well as certification that the equipment is for the purpose of pollution control?

■ Here again, the parties disagree concerning the proper interpretation of the statute. The tax court's characterization of the certification provisions of the statute (subsection C) as not constituting "a model of legislative clarity" is well-founded. Subsection C is grammatically unsound and not susceptible to logical interpretation with any substantial degree of certainty.

When Senate Bill No. 7 (Laws 1968, now A.R.S. § 43–1030) was initially considered by the Senate Committee on Finance and Revenue, subsection C read as follows:

(c) In determining the adjusted basis for the purposes of subsection (a), such device, machinery or equipment shall include only an amount that is properly attributable to the construction, reconstruction, remodeling, installation or acquisition of such device, machinery or equipment after December 31, 1968, as certified by the state department of health.

As written, the provision lacks grammatical clarity, although some sense can be made by omitting the first two words and adding the preposition "of" as follows:

In determining [T]he adjusted basis for the purposes of subsection (a) [of] such device, machinery or equipment shall include only an amount that is properly attributable to the construction, reconstruction, remodeling, installation or acquisition of such device, machinery or equipment after December 31, 1968, as certified by the state department of health.

However, even if we imply these changes, the provision remains ambiguous. To what do the words "as certified by the state department of health" refer? What must the Department of Health certify? It could be argued that the certification phrase refers back to the word "amount", thereby imposing a requirement that the Department of Health audit the taxpayer's accounting records and, after verification, certify the actual amount expended by the taxpayer on pollution control equipment. If such was the intent, it would appear that the certification phrase should have immediately followed the word "amount". On the other hand, the phrase "as certified by the state department of health" more closely follows the nouns "device, machinery or equipment" and therefore could be considered as evidencing a legislative intent that the Department of Health was required to certify that the "device, machinery or equipment" was actually pollution control equipment qualifying for the accelerated amortization authorized by the statute.

■ The cardinal rule of statutory interpretation is to attempt to ascertain the meaning of the statute and the intent of the legislature. *City of Phoenix v. Maricopa County*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). We find nothing in subsection C, as initially introduced, that definitively indicates whether the required certification refers to the amount of the expenditure, or rather only to the nature of the equipment for which the claimed expenditures were made. However, the application of commonly accepted rules of statutory construction supports the conclusion that the qualifying phrase was intended to refer to the words "device, machinery or equipment."

■ A qualifying phrase is usually construed to apply to the word or phrase most immediately preceding it if there is no indication of a contrary intention.

Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.

2A N. Singer, Sutherland Statutory Construction § 47.33 (5th ed. 19__); *see also, Snyder v. Lena*, 145 Ariz. 583, 703 P.2d

527 (App.1985). In subsection C, the phrase "device, machinery or equipment" can be considered as the "last antecedent" without impairing the meaning of the sentence. This would lead to the conclusion that the legislative intent was to require that the Department of Health certify that the "device, machinery or equipment" was in fact pollution control equipment qualifying for the accelerated amortization authorized by the enactment.

The above conclusion is supported by an amendment to subsection C before it was given a "do pass" recommendation by the senate Committee on Finance and Revenue. As initially introduced, subsection C did not expressly set forth the details of the certification that the Department of Health Services was required to make concerning the pollution control equipment. The committee's amendment eliminated this omission by inserting language specifying exactly what the department was to certify:

> ... upon certification by the state department of health as a device, machinery or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants ...

As noted by the tax court, subsection C of A.R.S. § 43–1030 as finally enacted does not present a model of legislative clarity. Obviously, there was a legislative intent to limit accelerated amortization to costs attributable to the favored pollution control function. However, based on the above analysis we conclude that the statutorily required certification by the Department of Health was for the purpose of identifying the equipment that would qualify as pollution control equipment within the contemplation of the statute. In our opinion, there was no intent to impose upon the Department of Health an accounting-auditing function, requiring certification of actual costs to the taxpayer.[3] Such an auditing function would more appropriately fall within the expertise of the Department of Revenue in the performance of its tax return auditing duties once the equipment

devoted to the pollution control function has been appropriately identified and certified as such through the expertise of the Department of Health.

■ In view of statements made by the Department of Revenue in both the trial court and in its brief on appeal, we find it necessary to make one further observation concerning the extent of the certification required by A.R.S. § 43–1030. Both the Department of Revenue and the Department of Health Services have taken the position that before the taxpayer's pollution control equipment can qualify for certification and the accelerated amortization allowed by A.R.S. § 43–1030, it must be shown that the pollution control equipment will enable the taxpayer to conform to applicable pollution control standards established by law. We find nothing in the statute to support this view. The certification required by subsection C relates only to the nature of the equipment—that it be a "device, machinery or equipment for collection and control at the source of atmospheric and water pollutants and contaminants...." As long as the pollution control equipment tends to accomplish the statutory purpose, it qualifies. The statutory language makes no reference to Arizona statutes relating to standards for pollution control, and does not require that the equipment will enable the taxpayer to conform with any such statutes or other provisions of Arizona or federal law.

In summary, insofar as pertinent to the issues presented in this appeal, the accelerated amortization provisions of A.R.S. § 43–1030 apply equally to in-state and out-of-state pollution control equipment; the statute imposes a duty on the Department of Health Services to certify out-of-state pollution control equipment of the nature described in the statute; and, there is no requirement that the certification by the department include a certification of the cost of the pollution control equipment to the taxpayer.

---

**3.** In fact, contrary to the state's position that the department is required to certify the amount expended for the favored function by the taxpayer, the form of certification used by the

department does not even purport to certify the costs to the taxpayer. The form merely states that "the invoices and receipts which were submitted show a total cost of $_____."

We now examine the record to determine whether the facts show reasonable compliance by the taxpayer with the statutory requirements, or, if not, whether, by reason of the combined conduct of the Department of Health Services and the Department of Revenue, the state is estopped to deny compliance.

## THE FACTS AND THE TAXPAYER'S ESTOPPEL CLAIMS

**A. The taxpayer did not factually comply with the statute.**

■ The taxpayer's argument on appeal that it factually complied with the statutory requirements is based upon the premise that, for pollution control equipment located in the state of New Mexico, certification by New Mexico's Environmental Improvement Agency was sufficient. Leaving aside for the moment the taxpayer's argument that the state is estopped to deny compliance, we reject this argument. As we have previously stated in this opinion, the statute clearly requires certification by Arizona's Department of Health Services, without regard to whether the equipment is located in-state or out-of-state. Since the taxpayer did not obtain any certification from that department relating to the pollution control equipment in issue in this case, it did not factually comply with the statute. Therefore, the taxpayer's claim for accelerated depreciation under A.R.S. § 43–1030 must fail, unless it can show that the state is estopped to deny to the taxpayer the benefits of accelerated depreciation as contemplated by the statute.

**B. . The facts and procedural history relating to the taxpayer's estoppel argument.**

■ We have previously discussed the facts of this case in a very general manner in our consideration and analysis of A.R.S. § 43–1030, and have concluded that the taxpayer's claim for accelerated depreciation must fail unless estoppel lies against the state. In order to evaluate the taxpay-

er's estoppel claim, a more detailed consideration of the facts and the procedural history of this case is necessary. However, before we proceed with a detailed discussion of those facts, we note that in both the trial court and on this appeal, the state has never contended that the taxpayer's claim was not in fact based upon valid expenditures for pollution control equipment qualifying under the statute as a "device, machine or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants...."[4] Further, we find nothing in the record that indicates that the state now challenges the costs claimed by the taxpayer relating to the pollution control equipment.

At all times pertinent to this litigation, the taxpayer supplied electrical power to customers in a large service area in Arizona, and owned percentage interests in certain units of the Four Corners Generating Station and the San Juan Generating Station located in the coal fields of northwest New Mexico.

Before 1979, the Arizona Department of Revenue's income tax return preparation instructions authorized certification of out-of-state pollution control equipment by an agency from another state, as follows:

**Deduction For Air and Water Pollution Control Devices:**

A deduction to amortize expenditures incurred in the acquisition of air and water pollution control devices may be elected by the taxpayer based upon a period of sixty (60) months. A certificate from the Arizona State Department of Health is required to be attached to the tax return in order to claim this deduction. (Section 43–123.02(c), Arizona Revised Statutes (as amended).) *For property not located within Arizona a certificate from another State or Federal Agency may be submitted.*

(Emphasis added.) However, the department's 1979 instructions were modified so as to delete any reference to a requirement

---

4. We have rejected the state's argument that, in order to qualify under the statute, there must be a showing that the pollution control equipment

has enabled the taxpayer to conform with applicable pollution control standards.

of certification by either the Arizona Department of Health or by a non-Arizona agency.

In the process of preparing the taxpayer's 1979 Arizona income tax return, an employee of the taxpayer contacted the Arizona Department of Health Services concerning certification of the taxpayer's pollution control equipment at facilities outside Arizona. The employee was told that the Department of Health Services would not certify facilities outside Arizona. In fact, the department has never certified any out-of-state pollution control equipment for any taxpayer. After observing that the Department of Revenue's 1979 income tax return instructions were newly silent on the matter of certification of pollution control equipment, representatives of the taxpayer conferred with the audit supervisor for the Department of Revenue, Raleigh Kennedy. Kennedy informed them that the taxpayer could use a certification by the New Mexico Environmental Improvement Agency for compliance with A.R.S. § 43–1030(C). Accordingly, in its 1979 return the taxpayer submitted a certification by the New Mexico agency in support of its section 43–1030 election of accelerated amortization for the San Juan units.[5]

On its 1980 return, the taxpayer similarly elected accelerated amortization for an additional San Juan unit, and on its 1981 return for units at the Four Corners Generating Station. The taxpayer again supported its elections with certifications from the New Mexico agency, dated March 2, 1979 and July 15, 1980, respectively.

In 1981, Arizona's Department of Revenue audited the taxpayer's 1979 return. Initially one of the department's auditors disallowed the 1979 accelerated amortization deductions for the San Juan Units on the ground that the New Mexico certification did not comply with A.R.S. § 43–1030. However, Raleigh Kennedy, still the department's audit supervisor, overruled this determination and allowed the deductions in full. The taxpayer's 1979 return was closed in October of 1981 without additional assessments in that regard.

Five years later, in 1986, the department again audited the taxpayer's returns, this time for the years 1980 and 1981. The department's auditor disallowed the taxpayer's A.R.S. § 43–1030 accelerated amortization deductions on the pollution control devices in New Mexico for both years. His report stated: "[o]nly pollution control equipment located in Arizona and approved by the Arizona State Department of Health Services may be amortized. (A.R.S. § 43–1030 and Reg. R15–2–1030)." The auditor then recalculated the taxpayer's allowable deductions. This recalculation resulted in assessments of additional income tax liability of $647,023.38 for 1980, and $623,083.60 for 1981, plus interest.

After exhausting its administrative remedies before the Department of Revenue, the taxpayer appealed to the Arizona Board of Tax Appeals. The board sustained the department's assessments. The taxpayer then timely commenced this action in the superior court. The action was later transferred to the tax court. On cross-motions for summary judgment, the tax court ruled for the state. The tax court's opinion explaining its ruling is published as *Tucson Electric Power Co. v. Arizona State Department of Revenue*, 167 Ariz. 140, 804 P.2d 1328 (Tax 1991). The tax court rejected the taxpayer's estoppel argument. In essence, the tax court found that Arizona law precludes the application of the doctrine of estoppel to prevent the collection of taxes. The court also found that to apply estoppel in this case would bind the state by an unauthorized act of one of its employees.

In our opinion the tax court erred in rejecting the taxpayer's estoppel argument. It is true, as the state urges, that all prior decisions of the Arizona Supreme Court

5. The certification was dated November 17, 1977, and stated: (a) that the agency had examined a description of the pollution control facilities; (b) that the agency exercised jurisdiction over the facilities; and (c) that "such facilities, as designed, are in furtherance of the purpose of abating or controlling atmospheric pollutants or contaminates resulting from the generation of electricity by the [units]."

and this court that have considered the question have held that the state could not be estopped from enforcing tax laws validly enacted by the legislature. There is an important difference, however, between the situations presented in past cases and that presented here.

The central principle underlying past Arizona decisions is that the sovereign power of the state to impose taxes is vested in the legislature, and the state taxing authorities may not, by their words or conduct, waive the collection of taxes imposed by a valid legislative enactment.[6] All the Arizona tax decisions that we have found in which the court has refused to apply the doctrine of estoppel have involved situations in which the intent of the statute was to impose a tax upon the activities engaged in by the particular taxpayer. In seeking to avoid payment of the tax, imposed by the statute, the taxpayer was relying upon past actions or representations of taxing authorities to the effect that the statute did not impose a tax upon the taxpayer's activities. In each case, the court refused to permit the claimed action of the state taxing authorities to defeat the intent of the legislature to impose a tax on the very activities engaged in by the taxpayer.[7]

The taxpayer in this case, however, presents a very different situation. Here, the taxpayer is not relying upon estoppel to avoid the application of a taxing statute to the activities contemplated by the statute. In fact, it is clear from the statute that the sole intent of the legislature was to make the benefits of accelerated amortization available to a taxpayer, such as the taxpayer in this case, that has expended funds for pollution control purposes. It is undisputed in the record presented to this court that, from a factual standpoint, the taxpayer clearly was entitled to claim the benefits of that accelerated amortization.

In advancing its estoppel argument, the taxpayer seeks to enforce, rather than avoid, the basic intent of the statute. The representations of the Department of Revenue that the taxpayer relies upon for its estoppel argument were not that the taxpayer's activities were not taxable. Rather, they related solely to a procedural matter—the sufficiency of compliance by the taxpayer with the statute's certification requirements.

Recent Arizona decisions have shown a marked tendency to retreat from rigid common law principles formerly assumed essential to the maintenance of state sovereignty. Thus, in *Freightways, Inc. v. Arizona Corp. Comm'n,* 129 Ariz. 245, 630 P.2d 541 (1981), the Arizona Supreme Court recognized that the "no estoppel" rule had often resulted in injustice, and retreated substantially from its long-standing application of that rule. In *Freightways* the court held that the state (acting through the Arizona Corporation Commission) was estopped from questioning the validity of a previously issued certificate of convenience and necessity. In *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982), the court reaffirmed its decision in *Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 381 P.2d 107 (1963), severely limiting the common law defense of governmental tort immunity, and held that immunity is a defense "only when its application is necessary to avoid a severe hampering or thwarting of established public policy." 134 Ariz. at 311, 656 P.2d at 600. *See also, Pittsburgh & Midway Coal Mining Co. v. Arizona Dept. of Revenue,* 161 Ariz. 135, 776 P.2d 1061 (1989) (court abandoned common law doctrine that taxes paid voluntarily and without duress could not be recovered, and allowed recovery against the state); *Gosnell Development Corp. v. Arizona Dept. of Revenue,* 154 Ariz. 539, 744 P.2d 451 (App.1987) (in an indirect application of es-

---

**6.** As stated by the Arizona Supreme Court in *Duhame v. State Tax Commission,* 65 Ariz. 268, 179 P.2d 252 (1947): "Were this [no estoppel] not the rule taxing officials could waive most of the state's revenue."

**7.** *See, e.g., Arizona Tax Comm'n v. Dairy & Consumers Coop. Ass'n,* 70 Ariz. 7, 215 P.2d 235

(1950); *Duhame v. State Tax Comm'n,* 65 Ariz. 268, 179 P.2d 252 (1947); *Crane Co. v. Arizona State Tax Comm'n,* 63 Ariz. 426, 163 P.2d 656 (1945); *Arizona Lotus Corp. v. City of Phoenix,* 136 Ariz. 22, 663 P.2d 1013 (App.1983); *Knoell Brothers Construction, Inc. v. State Dept. of Revenue,* 132 Ariz. 169, 644 P.2d 905 (App.1982).

toppel, the court applied equal protection principles to require refund by the state of taxes paid by a taxpayer, notwithstanding the fact that the taxes had been imposed under a valid statute).

While the above decisions are not directly in point, the common perception running through them is a recognition that former rules based on the notion that "the king can do no wrong" should not be arbitrarily applied, but rather consideration should be given in each instance to the injustice that might result from the application of the rule, balanced against the effect that non-application would have on the state's effective exercise of its sovereignty and any resulting damage to the public interest. Thus, in *Freightways,* the court noted the holding of the Ninth Circuit Court of Appeals in *United States v. Lazy FC Ranch,* 481 F.2d 985, 989, 27 A.L.R.Fed. 694 (9th Cir.1973), to the effect that the "sovereign can be estopped if the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel." 129 Ariz. at 248, 630 P.2d at 544. The Arizona court then proceeded to apply the *Lazy FC Ranch* test to the facts in *Freightways* and refused to apply the "no-estoppel" rule based upon its finding that application would result in great damage to Freightways, that the public would not be damaged by upholding the certificate, and under the circumstances there would be no threat to the sovereignty of the Commission.

■ Applying the foregoing principles, we conclude that permitting estoppel against the state in this case would not unduly affect the exercise by the state of its governmental powers and sovereignty. The application of estoppel would not unduly interfere with the state's power to levy taxes since the representations in this case do not relate to whether the taxpayer was liable for a tax, but rather, solely to a procedural matter, the nature of the required certification. The result would be in accord with the basic purpose of the stat-ute to extend the benefits of accelerated amortization to a taxpayer installing qualifying pollution control equipment. Nor would there be any resulting damage to the public interest. On the other hand, the resulting damage to the taxpayer would be substantial, as evidenced by the judgment entered in this case.

We have previously pointed out in this opinion a critical distinction between the situation presented in this case and the situations presented in prior Arizona decisions that have refused to permit the application of estoppel against taxing authorities. In those cases, the application of estoppel would have directly and substantially impinged upon the state's sovereign power to levy taxes, since the representations or conduct of the taxing authorities relied upon by the taxpayer related directly to whether the taxpayer's activities were taxable. Because of this critical difference, we do not find those decisions persuasive or binding in our consideration of this case. For the same reason, we reject the state's contention, based on statements by the court in *Crane* and *Duhame,* that the provisions of Article 9, section 1 of the Arizona Constitution, preclude the application of estoppel in this case.[8]

■ Without question, the prerequisite elements for the application of estoppel are present in this case. The three elements of equitable estoppel are generally stated as follows: (1) affirmative acts inconsistent with a claim afterwards relied upon; (2) action by a party relying on such conduct; and (3) injury to the party resulting from a repudiation of such conduct. *Decker v. Hendricks,* 97 Ariz. 36, 396 P.2d 609 (1964); *Builders Supply Corp. v. Marshall,* 88 Ariz. 89, 352 P.2d 982 (1960); *Holmes v. Graves,* 83 Ariz. 174, 318 P.2d 354 (1957); *Dunn v. Progress Industries, Inc.,* 153 Ariz. 62, 734 P.2d 604 (App.1986).

Here, the affirmative acts of the state inconsistent with its later claim that the taxpayer had not complied with the statute's certification requirements consisted of the statements made in the Department

8. Ariz. Const., Art. 9, Sec. 1 provides, as pertinent to the state's argument, that the power of taxation "shall never be surrendered, suspended, or contracted away."

of Revenue's pre–1979 tax return instructions and the affirmative representations made by its income tax audit supervisor,[9] together with the Department of Health's consistent position that it had no duty to certify out-of-state pollution control equipment.[10] The state argues, however, that since these representations were not strictly factual in nature, they cannot form a basis for the application of estoppel. If this were an action involving two private litigants, the state's argument would have general validity, but, even in private litigation, exceptions to the general rule have been made.[11] In our opinion, the "factual-legal" dichotomy has much less validity in litigation involving the application of estoppel against governmental entities, since, as pointed out by the taxpayer, such litigation will invariably involve representations of governmental authorities concerning the application of law to a set of facts.

An illustration of this is found in the Arizona Supreme Court's decision in *Freightways*, although the issue was not discussed in the court's opinion. Prior representations concerning facts as opposed to legal rights did not form the basis for the application of estoppel against the governmental agency in *Freightways*. Rather, the representations or conduct which the agency was estopped to deny were legal in nature—the validity of a certificate of convenience and necessity which the agency had issued. We therefore reject the state's

contention that because of their legal nature, the representations made in this case could not form a basis for the application of estoppel.

There was also reliance in this case. The taxpayer, faced with the Department of Health Services' unqualified refusal to consider certification of out-of-state facilities, relied on the state's representations and filed certifications from New Mexico's Environmental Improvement Agency with its returns. As we have previously noted, the taxpayer will sustain substantial injury if the state is now allowed to repudiate its prior representations.

 As a final argument, the state contends that, in any event, estoppel should not be applied in this case because, even if it is assumed that the New Mexico agency could have validly fulfilled the statute's certification requirements, the New Mexico certificates were insufficient. In response, although this issue was presented to the tax court in the parties' motions for summary judgment, the taxpayer notes that the tax court did not rule on the sufficiency of the New Mexico certifications, and suggests that questions of fact are presented not suitable for resolution in this appeal. The state has not suggested the existence of factual issues on this point, and we have examined the record and find no factual issues concerning the sufficiency of the

9. While the audit supervisor's representations were "unauthorized" in the sense that they were contrary to the provisions of the statute as we have interpreted it, there is no evidence that he was not acting within the general parameters of his authority. Therefore, under appropriate circumstances otherwise supporting the application of estoppel, his representations would be binding on the state. *See Board of Regents of Univ. of Washington v. City of Seattle,* 108 Wash.2d 545, 741 P.2d 11, 15 (1987).

10. In its written opinion the tax court takes the position that the taxpayer should have taken some further action to induce the Department of Health Services to perform its statutory obligations. If there were anything in the record to indicate that further attempts in that regard by the taxpayer might have been successful, there might be some validity in the tax court's views. However, the record throughout these proceedings is clear—The Department of Health Servic-

es has consistently contended that the statute was not applicable to out-of-state pollution control equipment. Also, the actions of the taxpayer relating to the Department of Health Services must be viewed in the context of the contemporaneous representations of the Department of Revenue that the New Mexico agency's certification would suffice.

11. In *Flynn v. Rogers,* 172 Ariz. 62, 834 P.2d 148 (1992), the Arizona Supreme Court reversed a decision of the court of appeals which held that the defense of laches (a form of estoppel) was applicable because delay based on the party's mere lack of knowledge of her legal rights was inexcusable. The party in *Flynn* had full knowledge of the facts giving rise to those legal rights. Under the unusual facts involved in *Flynn,* the Arizona Supreme Court held that ignorance of a party's legal rights could excuse a delay in suing, and reversed the court of appeal's holding to the contrary.

**518**

New Mexico certifications. Therefore, we will proceed to consider the state's argument.

Most of the state's arguments concerning alleged deficiencies in the New Mexico certifications are based on its erroneous contentions as to what is required by the certification statute. Thus, we have previously discussed and rejected the state's contention that A.R.S. § 43–1030(C) requires certification of the cost of the pollution control equipment and that the equipment would enable the taxpayer to conform to pollution control standards. As we have previously noted, the certification required by subsection C relates only to the nature of the equipment—that it be a "device, machinery or equipment for the collection and control at the source of atmospheric and water pollutants and contaminants...." The New Mexico certifications meet the substance of this requirement, stating that the facilities "are in furtherance of the purpose of abating or controlling atmospheric pollutants or contaminants resulting from the generation of electricity by the [units]." We reject the state's arguments concerning the sufficiency of the New Mexico certifications.

In conclusion, the facts in this case show a taxpayer conscientiously and diligently attempting to comply with and obtain the benefits of a statute in accordance with the legislative intent embodied in that enactment, obstructed by the actions of one state agency arbitrarily refusing to perform the obligations imposed upon it by that statute, and now confronted by another state agency attempting to deny the taxpayer the benefits of the statute by repudiating that agency's previous representations relied upon by the taxpayer. To paraphrase a statement made by Justice Martone in another tax case (*Pittsburgh & Midway Coal Mining Co. v. Arizona Department of Revenue, supra*), an honorable government cannot allow this to occur.

In view of our holding that the state is estopped to deny the sufficiency of the

taxpayer's compliance with the certification requirements of A.R.S. § 43–1030, we need not consider other issues raised by the taxpayer in support of its arguments for reversal.

The judgment entered in the tax court is reversed, and this matter is remanded with instructions to enter judgment for the taxpayer. The taxpayer's request for attorneys fees on appeal pursuant to A.R.S. § 12–348(B) is granted in an amount to be determined upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

EHRLICH, P.J., and CONTRERAS, J., concur.

Note: Retired Judge Levi Ray Haire was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20 and A.R.S. § 38–813.