176 Ariz. 628 (1993)
863 P.2d 920
PCS, INC.
v.
ARIZONA DEPARTMENT OF REVENUE.
No. TX 93-00201.
Tax Court of Arizona.
November 16, 1993.
Michael G. Galloway, Phoenix, for plaintiff.
James M. Susa, Phoenix, for defendant.
OPINION
SCHAFER, Judge.
The Taxpayer, PCS, Inc. (PCS), brought this action against the Arizona Department of Revenue contesting use taxes imposed against it under A.R.S. § 42-1408. The issue presented is whether the processing of blank plastic cards into prescription plan identification cards is "use," "storage," or "consumption" in Arizona. A.R.S. §§ 421401, 1454.
PCS is a manager of prescription drug benefits. It sells a service plan to sponsors who provide prescription drug benefits to employees covered by the plan. Approximately 98% of the plans are "RECAP[SM]" plans which allow a participating pharmacist to have on-line capabilities with the PCS computers, located at PCS headquarters in Scottsdale, Arizona. By "swiping" the RECAP card, which is magnetically encoded with information, the pharmacist can submit his claim directly to PCS electronically and he may receive information about the sponsor's plan at the same time.
PCS orders blank plastic cards from out-of-state vendors and has them shipped to its headquarters in Scottsdale. PCS accumulates covered employee and plan sponsor information and enters it into its computer in Arizona. The blank cards are then processed and imprinted with the covered employee's name, plan sponsor information and any other pertinent information, including plan sponsor 800 telephone numbers.
*629 Once the cards are processed and imprinted they are shipped to plan sponsors for distribution to their covered employees. About 91% of the processed cards are shipped to out-of-state plan sponsors; the remaining 9% are used by plan sponsors within Arizona. Once the processed cards have been shipped to plan sponsors or covered employees, PCS neither retains ownership of the cards nor receives the cards back.
PCS has processed as many as 27 million blank cards in a year and at any one time it may have up to 8 million blank cards at its Scottsdale facilities.
In 1990, the Department of Revenue ("Department") audited PCS for the period January 1, 1986, through January 31, 1990. The Department made a deficiency assessment which included, among other items, a use tax imposed on all of the blank cards brought into and processed in Arizona, including those shipped and used out-of-state.
PCS challenges the propriety of the use tax on the cards processed here and shipped out of state.[1] It contends the card processing activities do not fall within the scope of the use tax, and, even if the processing falls within the scope of the tax, the Department is estopped from assessing the tax. It also argues the assessment may not be done retroactively.
The Court finds PCS's blank card processing is a "use" and "consumption" in Arizona and PCS is subject to the use tax. The Court also finds the cards shipped out of state are "stored" while they are in Arizona.
ANALYSIS
Arizona imposes an excise tax on "the storage, use or consumption in this state of tangible personal property purchased from a retailer." A.R.S. § 42-1408(A). It is presumed tangible personal property purchased elsewhere and brought into Arizona is purchased for storage, use or consumption in this state and is therefore subject to the use tax. A.R.S. § 42-1402. The taxpayer has the burden to prove its activities are not taxable.
The Department claims when PCS processes the cards in Arizona it uses, consumes, and stores them here and is, therefore, subject to Arizona's "use" tax. PCS claims its processing operations are merely preparatory and it uses, consumes and stores nothing in Arizona.
A. "Use" or "Consumption"
"Use or consumption" is very broadly defined in the Arizona statutes as "the exercise of any right or power over tangible personal property incidental to owning the property except holding for sale or selling the property in the regular course of business." A.R.S. § 42-1401(8). The Random House Dictionary of the English Language defines "use" as "to employ for some purpose; put into service; make use of" and it defines "consume" as "to destroy or expend by use; use up." By either definition, PCS used and consumed the blank cards in Arizona because it exercised right and power over them. It used the cards as platforms to hold information and it consumed them in the reforming process  they virtually disappeared, going in as inert pieces of plastic, coming out as intricate electronic devices.
There are no cogent Arizona cases. PCS cites a handful of near misses from other states. The closest seems to be Exxon Corp. v. State Board of Equalization, 783 P.2d 685 (Wyo. 1989) in which the Wyoming Supreme Court discussed the definition of the word "use" in its tax statutes. Wyoming's statutory definition of "use" is almost identical to ours  "the exercise of any right or power over tangible personal property incident to ownership...." Id. at 688. The fact situation in that case is quite like ours, but different  there was no reformation process in Exxon. The issue before the Wyoming court was whether Exxon, a New Jersey corporation, had used pipe in Colorado when it bought the pipe from a Texas vendor, had it shipped to Colorado where a coating of epoxy was put on it to prepare it for installation and then *630 shipped it to Wyoming where it was installed as part of a pipeline. The court said it looked to the nature of the property, its intended use, and whether the property had actually been used in Colorado. It concluded the pipe's intended use was installation in the Wyoming pipeline and the activities in Colorado were merely preparatory for the pipe's ultimate intended use. Therefore the pipe was not "used" in Colorado. Throughout its journey the pipe remained pipe, its nature never changed and its intended use never changed. That is not true of the plastic cards in this case; their nature and intended use changed appreciably once they began their journey and were processed.
B. "Storage"
Arizona's use tax may also be imposed on tangible personal property which is held in "storage" in Arizona. A.R.S. § 42-1408. "Storage" is defined as "keeping or retaining tangible personal property purchased from a retailer for any purpose except sale in the regular course of business or subsequent use solely outside this state." A.R.S. § 42-1401(6). Thus, property kept in Arizona for any purpose, even changing it from a plastic card to an electronic device, is "stored" in Arizona because it is kept here for a purpose  processing.
There is an exception to the definition of "storage" in section 42-1401(6)  property is not stored in Arizona if it is kept here to be later used outside the state. But, the exception is a limited one. It applies only when the sole use to which the property is put occurs outside of Arizona. That is not true here; the cards are put to use in Arizona. The fact they may also be used when they go to other states does not change the fact that they are used here.
C. Estoppel
PCS argues even if the cards are subject to the use tax the Department is estopped from collecting the tax. It argues it relied on the Department's previous determination that the cards were not "used" in Arizona and therefore the Department may not collect the tax for past years.[2] However, PCS's argument goes directly against well settled law which refuses to apply estoppel to the Department in this situation.
In Arizona Lotus Corporation v. City of Phoenix, 136 Ariz. 22, 663 P.2d 1013 (1983) the taxpayer presented a similar argument. The court there held:
[E]ven where there is a clear administrative practice of applying the taxing statutes in a certain manner, that practice does not mandate continued adherence where the taxing statute is clear and requires a different result. [Citations omitted.] Furthermore, continued failure to collect a tax does not preclude eventual taxation. [Citation omitted.]
Id. at 24, 663 P.2d at 1015. That holding applies here.
Arizona courts have repeatedly found estoppel will not be applied against the taxing authorities except in rare and unique circumstances. The rule, although stated in different ways, is clear:
[T]here can be no estoppel involved against a sovereign state. The failure of the tax commission to attempt to collect taxes now sought to be collected from plaintiff for a period of years constitutes no defense to their collection.
Arizona Tax Commission v. Dairy & Consumers Cooperative Association, 70 Ariz. 7, 14, 215 P.2d 235, 240 (1950).
The estoppel argument is also negated by the Arizona Constitution, art. 9, § 1, which provides "[t]he power of taxation *631 shall never be surrendered, suspended, or contracted away." Additionally, the refusal to apply estoppel to the taxing authorities is based upon the fundamental principle:
In the matter of collecting revenues, the state is acting in its governmental or sovereign capacity, and ordinarily there can be no estoppel. Were this not the rule the taxing officials could waive most of the state's revenue.
Crane Company v. Arizona State Tax Commission, 63 Ariz. 426, 441, 163 P.2d 656, 662 (1945). This reasoning is particularly applicable here. If the Department is estopped from collecting the use tax which is applicable to PCS's operations then the taxing officials who informally met with PCS representatives several years ago would have, in effect, acted to waive the Department's right to collect the use tax. This is not allowable.
PCS points this Court to Tucson Electric Power Company v. Arizona Department of Revenue, 174 Ariz. 507, 851 P.2d 132 (1993) to support its assertion of estoppel. But that case doesn't help PCS. PCS overlooks the limitations expressed in that case regarding the type of case where estoppel may be found. The Tucson court limited its holding by noting:
We have previously pointed out in this opinion a critical distinction between the situation presented in this case [where `the taxpayer is not relying upon estoppel to avoid the application of a taxing statute to activities contemplated by the statute'] and the situations presented in prior Arizona decisions that have refused to permit the application of estoppel against the taxing authorities. In those cases, the application of estoppel would have directly and substantially impinged upon the state's sovereign power to levy taxes, since the representations or conduct of the taxing authorities relied upon by the taxpayer related directly to whether the taxpayer's activities were taxable.
Id., at 32, 851 P.2d at 141. PCS falls squarely within the class of cases being distinguished from the case presented to the Tucson court.
CONCLUSION
PCS uses, consumes, and stores its blank cards in Arizona. Estoppel will not be applied against the Department in this case.
IT IS ORDERED granting Defendant's Motion for Summary Judgment.
IT IS ORDERED denying Plaintiff's Motion for Summary Judgment.
This opinion is not a final, appealable judgment and no other order will follow. See Devenir Associates v. City of Phoenix, 169 Ariz. 500, 821 P.2d 161 (1991).
NOTES
[1] PCS does not challenge the use tax assessed on the cards which are not shipped out of state.
[2] PCS also asserts that by now seeking to collect taxes for prior years the Department is improperly retroactively changing its administrative decision. To support its position PCS cites cases dealing with the retroactive application of regulations, case decisions, and laws. PCS reads these cases too broadly. While it is true there are strict limitations on the retroactive application of regulations, case decisions, and laws, none of these are involved here. The Department did not change a regulation or a rule, nor did it adopt a new taxing provision. The Department has merely changed a previous informal interpretation of existing laws and regulations. Nothing is being "retroactively" applied.