938 P.2d 469

**STATE of Arizona, ex rel. ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellant,**

v.

**John D. DRIGGS and Gail D. Driggs, Defendants–Appellees.**

**No. 1 CA–TX 94–0017.**

Court of Appeals of Arizona, Division 1, Department T.

May 28, 1996.

As Amended June 14, 1996.

Reconsideration Denied July 18, 1996.

Review Denied July 1, 1997.*

* Jones, Vice C.J., recused himself and did not participate in the determination of this matter.

Grant Woods, Attorney General by Gail H. Boyd and Kimberly J. Cygan, Assistant Attorneys General, Phoenix, for Appellant.

Newmark Irvine, P.A. by Stephen C. Newmark, Phoenix, for Appellees.

FIDEL, Presiding Judge.

An error in the forms and instructions that the Arizona Department of Revenue issued for the taxable year 1986 led taxpayers John and Gail Driggs to overstate their deductions and understate their taxable income. In this tax appeal, the Department attempts to collect a resulting $1428.08 deficiency plus fifty percent of the interest normally collectable on that amount.

We consider the following issues:

1. Were the original forms and instructions mistaken?

2. If so, may the Department be equitably estopped from collecting a deficiency that it caused by its mistaken forms?

3. If not, may the Department at least be equitably estopped from collecting any interest on the principal deficiency amount?

## I.

The Taxpayers filed an Arizona state income tax return for the taxable year 1986, using forms and instructions prepared and

disseminated by the Department. Pursuant to Arizona statute, the Taxpayers deducted [1] from gross income the dividends they had earned on stock held in an Arizona corporation. Arizona's tax statutes also permitted the Taxpayers to deduct the income tax they paid to the federal government, but—according to the Department—only to the extent that federal taxes were assessed on income that the State also taxed.[2] *See* Arizona Revised Statutes Annotated ("A.R.S.") § 43–961(5). Thus, according to the Department, the Taxpayers should not have been able to deduct that portion of their federal income tax that was assessed on the dividend income from Arizona corporations. However, the Arizona tax-return forms and instructions for 1986 (and for thirteen other years both before and after 1986) made no provision for reducing the federal-tax deduction by the amount of federal income taxes paid on dividend income from Arizona corporations. Consequently, by properly filling out their state income-tax return, the Taxpayers took a larger deduction—and paid less tax—than the Arizona tax statutes permitted.

After concluding that its forms and instructions were inconsistent with governing statutes, the Department issued the Taxpayers a deficiency tax assessment. The Department later reduced the amount of the assessment, but the Taxpayers appealed. When the Arizona State Board of Tax Appeals ruled in the Taxpayers' favor, the Department appealed to the Arizona Tax Court. In á published opinion, *State ex rel. Dep't of Revenue v. Driggs,* 178 Ariz. 389, 873 P.2d 1311 (Tax 1994), the tax court granted the Taxpayers' motion for summary judgment, ruling that the Department was estopped from collecting any deficiency in these circumstances. The Department now appeals the tax court's ruling to this court.

## II.

■ We first consider the Taxpayers' argument that the original forms and instruc-

tions were proper all along and that the Department is mistaken in claiming that any deficiency is due. The Taxpayers base their argument upon a distinction between *deductions* and *subtractions* and upon the wording of A.R.S. § 43–961, which reads:

> In computing taxable income no deduction shall in any case be allowed in respect of:
>
> . . . .
>
> 5. Any amount ... that would otherwise be allowable as a deduction or an adjustment, which is allocable to one or more classes of income ... that is not required to be included in a person's Arizona adjusted gross income or Arizona taxable income.

According to the Department, § 43–961 precludes deduction of federal income taxes allocable to Arizona corporate dividends, because Arizona corporate dividends are a "class[ ] of income ... not required to be included in a person's ... Arizona taxable income." *Id.* But the Taxpayers respond that § 43–961 applies only to *deductions,* a term of art that does not include the federal-tax adjustment of A.R.S. § 43–1022(11), which falls within the separate and distinct category of *subtractions.*

In the Arizona tax statutes, the term *subtractions* is used to describe "above-the-line" adjustments that reduce overall income to "adjusted gross income." The term *deductions* is used to describe "below-the-line" adjustments that further reduce adjusted gross income to "taxable income." *Compare* A.R.S. § 43–1022 (titled "Subtractions from Arizona gross income") *with* A.R.S. tit. 43, ch. 10, art. 4 (A.R.S. §§ 43–1041 *et seq.*) (titled "Deductions and Personal Exemptions"). Emphasizing this distinction, the Taxpayers argue that § 43–961 restricts "deductions" only in the refined, below-the-line sense of the word and does not apply to an above-the-line federal tax subtraction.

---

1. For the sake of simplicity, we use the word "deduction" inclusively in this opinion to refer to any negative adjustment to a taxpayer's income, whether that adjustment be a *subtraction* to reach Arizona adjusted gross income or a *deduction* to reach taxable income. We will italicize the word, as above, when, in the course of this opinion, we use it only in its more limited, latter sense.

2. We address the Taxpayers' contrary argument in Part II, *infra.*

We note in passing that the 1986 forms did not comprehensively exclude the federal tax subtraction from the ambit of § 43–961, as would follow from the Taxpayers' argument. To the contrary, the forms provided for reduction of the federal tax subtraction to account for federal tax paid on many types of income not taxed by the State. The forms simply failed to provide for a reduction to account for federal tax paid on one particular type of income not taxed by Arizona—Arizona corporate dividends. Thus, the Taxpayer's argument, if correct, has implications far broader than may first appear. Not only would it validate the Department's 1986 treatment of federal taxes paid on Arizona corporate dividends; it would invalidate the Department's 1986 treatment of federal taxes paid on other forms of income not taxable in Arizona.

We conclude that the Taxpayers' argument is not correct. Rather, it is plain from the structure and language of § 43–961 that the word "deduction" in the opening phrase, "no deduction shall in any case be allowed," must be read in its inclusive, not its limited sense. We know this because subsection (5) limits "[a]ny amount ... that would otherwise be allowable as a deduction *or* an adjustment" (emphasis added), and because subsection (5) applies both to items of income "not required to be included in a person's Arizona adjusted gross income" (i.e., *subtractions) and* to items of income "not required to be included in a person's ... Arizona taxable income" (i.e., *deductions* ).

The Taxpayers have not offered an interpretation of A.R.S. § 43–961(5) that is consistent with their claim that that statute was correctly applied by the Department in its 1986 forms and instructions. We uphold the Department's conclusion that the form and instructions were erroneous.

### III.

■ We next consider whether the Department can be estopped from collecting the deficiency assessment. The Taxpayers have unquestionably established the elements of erroneous representation and reasonable reliance. Had the Department issued proper forms and instructions, the Taxpayers would presumably have complied. The court's equitable impulse is constrained, however, by a considerable body of authority that precludes estopping the State from the collection of its revenues.

■ In *Crane Co. v. Arizona State Tax Commission,* our supreme court proscribed estoppel on constitutional grounds:

> The general rule is that the state will not be estopped in the collection of its revenues by an unauthorized act of its officers. In the matter of collecting revenues, the state is acting in its governmental or sovereign capacity, and ordinarily there can be no estoppel. Were this not the rule the taxing officials could waive most of the state's revenue. The [Arizona] Constitution, Art. 9, Sec. 1, provides that the power of taxation (which must of necessity include collection) "shall never be surrendered, suspended, or contracted away." To hold that the commission by regulation may waive taxes which the law required to be imposed would be violative of this provision.

63 Ariz. 426, 441, 163 P.2d 656, 662 (1945) (citations omitted). Our courts have followed *Crane Co.* in numerous subsequent opinions. *See, e.g., Duhame v. State Tax Comm'n,* 65 Ariz. 268, 281, 179 P.2d 252, 260 (1947); *Knoell Brothers Constr., Inc. v. Arizona Dep't of Revenue,* 132 Ariz. 169, 172, 644 P.2d 905, 908 (App.1982). This court has recognized the continuing validity of *Crane Co.* as recently as *PCS, Inc. v. Arizona Department of Revenue,* 186 Ariz. 539, 542–544, 925 P.2d 680, 683–685 (App. 1995).

The Taxpayers, however, invoke one prominent exception to the general rule. In *Tucson Electric Power Co. v. Arizona Department of Revenue ("TEP"),* the Department tried to deny a taxpayer an otherwise appropriate deduction because the taxpayer, by following the Department's erroneous instructions, had omitted a prerequisite procedural step. 174 Ariz. 507, 516, 851 P.2d 132, 141 (App.1992). Finding estoppel available under these circumstances, the *TEP* court explained:

> In advancing its estoppel argument, the taxpayer seeks to enforce, rather than

avoid, the basic intent of the statute. The representations of the Department of Revenue that the taxpayer relies upon for its estoppel argument were not that the taxpayer's activities were not taxable. Rather, they related solely to a procedural matter....

*Id.* at 515, 851 P.2d at 140.

The tax court adopted the Taxpayers' argument that this case should be governed by the *TEP* exception and not by *Crane.* The tax court explained:

the representations in the forms and instructions followed by the Driggses did not relate to whether the Driggses were liable for a tax, but rather, related solely to a procedural matter—the mathematical calculation of the percentage of a subtraction.

178 Ariz. at 391, 873 P.2d at 1313.

The tax court, in our judgment, misread *TEP* as permitting estoppel to be applied whenever the Department's error can be categorized as "procedural," not "substantive." The procedural/substantive distinction, always elusive at the margins, provides especially little guidance in a field as procedure-bound as tax. We indeed observed in *TEP* that the Department could not retroactively raise a procedural hurdle to the Taxpayer's claiming of a statutorily warranted deduction. The essential point, however, was that the *TEP* deduction *was* statutorily warranted. That is what the *TEP* court meant in describing the taxpayer as "seek[ing] to enforce, rather than avoid, the basic intent of the statute." 174 Ariz. at 515, 851 P.2d at 140. Here, by contrast, the Taxpayers seek to preserve a mistakenly enlarged deduction and, thus, "to [avoid], rather than [enforce], the basic intent of the statute." *Id.* In such circumstances, the *Crane* rule, not the *TEP* rule, applies.

IV.

■ Whether the State may collect interest might seem to be another matter entirely.[3] In estopping the Department from collecting interest, we would not force the State to forego any of the revenue that it should have collected in 1986; nor would the Tax-

payers' deductions be improperly enlarged. Further, even if the Taxpayers should be required to return a windfall of principal to the State, it is equitably troublesome to permit the State to extract interest from citizens whose only transgression was to follow instructions drafted and disseminated by the State itself. Here again, however, the court must conform its equitable inclinations to the law.

The Taxpayers argue that we may distinguish interest from the principal tax deficiency under *Biles v. Robey,* which held that interest "is no part of the tax itself ..., but is a penalty which is merely a part of the procedure used by the state for the purpose of collecting the tax." 43 Ariz. 276, 287, 30 P.2d 841, 845 (1934). However, *Biles* was decided long before the enactment of A.R.S. § 42–134, the statute under which the Department assessed interest in this case. That statute, enacted in 1985, provides:

A. If it is provided by law that interest applies as determined pursuant to this section, the department shall apply the rate of interest, compounded annually, established by the director.... On January 1 of each year *the department shall add any interest outstanding as of that date to the principal amount of the tax. For purposes of this section the amount added to the principal is. thereafter considered a part of the principal amount of the tax and accrues interest pursuant to this section.*

B. If the tax ... or any portion of the tax is not paid on or before the date prescribed for its payment the department shall collect, *as a part of the tax,* interest on the unpaid amount at the rate determined pursuant to this section from the date prescribed for its payment until it is paid.

(Emphasis added.)

Whatever the law may have been in 1934, our tax statutes now plainly provide that the interest assessed on a tax deficiency is not a penalty, but rather, "a part of the tax" itself. Thus, the interest assessed on a tax deficiency falls equally with principal within the no-estoppel rule of *Crane.*

3. Following oral argument, the court ordered supplemental briefing on this issue.

We do not mean to suggest that the legislature acted purposefully to put interest beyond the reach of equitable estoppel with the passage of A.R.S. § 42–134. This side-effect of rolling interest into principal may have been beyond the legislature's contemplation at the time. Whatever the legislature's specific intent, however, our tax statutes define interest as a part of the tax, and we must accept that definition in this case.

Further, even if the legislature did not contemplate the equities of interest collection when enacting A.R.S. § 42–134 in 1985, it did so in 1991, and acted expressly to provide a measure of equitable relief in situations such as this. Specifically, in 1991, the legislature directed the Department to collect only fifty percent of the interest otherwise assessable on tax deficiencies from the years 1986, 1987, and 1988, if such deficiencies arose from taxpayers' reasonable reliance on erroneous tax-return forms prepared by the Department. *See* 1991 Ariz. Sess. Laws, ch. 307, § 2(B). This session law shows that our legislature anticipated cases such as this and found the proper remedy a fifty percent reduction, rather than complete abatement, of the interest owed. We conclude that that legislature, by defining interest as "part of the tax," placed interest equally with principal within the no-estoppel rule of *Crane*. Equitable relief in present circumstances is limited to the fifty percent interest reduction provided by the legislature itself. The Department has properly limited its interest claim to fifty percent.

## CONCLUSION

Our holding that the Department may collect the deficiency assessment against the Taxpayers moots the Taxpayers' request for costs and attorneys' fees pursuant to A.R.S. § 12–348(B). We reverse the opinion of the tax court and remand this matter for entry of judgment consistent with this opinion.

LANKFORD and SULT, JJ., concur.