906 P.2d 61

**Phyllis CARLSON, Appellant,**

v.

**ARIZONA DEPARTMENT OF
ECONOMIC SECURITY,
Appellee.**

No. 1 CA–UB 94–0129.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 31, 1995.

---

George McKay, Community Legal Service, Peoria, for Appellant.

Grant Woods, The Attorney General by Daniel W. Pozefsky, Assistant Attorney General, Phoenix, for Appellee Arizona Department of Economic Security.

## OPINION

KLEINSCHMIDT, Judge.

The Appellant, Phyllis Carlson, unwittingly as the result of an error made by the Arizona Department of Economic Security, received more food stamps than the amount to which she was entitled. She was ordered to restore the value of the overage. She appeals, claiming that the Department is equitably estopped from requiring restitution. We disagree with Carlson, and we affirm the order for restitution.

### FACTS AND PROCEDURAL HISTORY

The facts are undisputed. Carlson first applied for food stamps in February 1992 and was certified to receive them for a period of twelve months. In March 1992, she received an increase in her rent subsidy which took effect in April of that year. She reported this fact to the Department. This change resulted in a decrease in the amount of food stamps to which she was entitled, but, by mistake, the Department failed to effect a reduction. Carlson was unaware that a mistake had been made. By the time the Department discovered the mistake, Carlson had received excess stamps in the amount of $654.

The Department sent Carlson a notice for repayment. Carlson requested a hearing. She did not contest the Department's determination that too many food stamps had been issued to her; rather, she argued that the Department was equitably estopped from seeking restitution.

The administrative law judge declined to address the issue of estoppel and ruled in favor of the Department. The Appeals Board affirmed and Carlson's application for appeal was granted.

### THE DEPARTMENT IS NOT ESTOPPED FROM SEEKING RESTITUTION

Title 7 of the Code of Federal Regulations ("C.F.R.") governs the Food Stamp and Food Distribution Program. Section 273.18 provides:

(a) Establishing claims against households. All adult household members shall be jointly and severally liable for the value of any overissuance of benefits to the household. The State agency *shall* establish a claim against any household that has received more food stamp benefits than it is entitled to receive....

(b) Criteria for establishing inadvertent household and administrative error claims. The State agency *shall* take action to establish a claim against any household that received an overissuance due to an inadvertent household or administrative error if the criteria specified in this paragraph have been met. At a minimum, the State agency *shall* take action on those claims for which 12 months or less have elapsed between the month an overissuance occurred and the month the State agency discovered a specific case involving an overissuance....

(Emphasis added.)

Under these regulations, the Department was required to establish a claim against Carlson for the $654. *See* Ariz.Admin.Code ("A.A.C.") R6–3–2404, R6–3–2405, and R6–3–2406. Carlson claims that, notwithstanding the regulations, the Department is equitably estopped from pursuing its claim. Equitable estoppel is a rule of justice which, when all its elements are met, prevails over all other rules. *Freightways, Inc. v. Arizona Corp. Comm'n,* 129 Ariz. 245, 247, 630 P.2d 541, 543 (1981). Equitable estoppel is generally applicable when the following factors are present:

(1) conduct by which one induces another to believe in certain material facts; and

(2) the inducement results in acts in justifiable reliance thereon; and

(3) the resulting acts cause injury.

*Heltzel v. Mecham Pontiac,* 152 Ariz. 58, 61, 730 P.2d 235, 238 (1986).

At one time, a government was not subject to equitable estoppel, but that rule has changed. *See generally Tucson Electric Power v. Arizona Dept. of Revenue*, 174 Ariz. 507, 513–18, 851 P.2d 132, 138–43 (App.1993). The doctrine will apply to the state "if the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel." *Id.* at 516, 851 P.2d at 141, citing *Freightways*, 129 Ariz. at 248, 630 P.2d at 544. Additionally, the imposition of estoppel must not unduly affect the state's exercise of its governmental powers and sovereignty. *Tucson Electric Power*, 174 Ariz. at 516, 851 P.2d at 141.

The party attempting to estop the government must first show that the government engaged in wrongful conduct. *See Freightways*, 129 Ariz. at 248, 630 P.2d at 544. In cases where the state's actions involved mere negligence or oversight, the courts have refused to apply equitable estoppel. *See Outdoor Systems, Inc. v. Arizona Dept. of Transp.*, 171 Ariz. 263, 830 P.2d 475 (App.1992) (finding that the state agency's inadvertent issuance of three nonconforming sign permits and failure to notice the error for two years did not amount to wrongful conduct which would give rise to equitable estoppel); *Mohave County v. Mohave–Kingman Estates, Inc.*, 120 Ariz. 417, 586 P.2d 978 (1978) (county's failure to immediately enforce the terms of a land sale contract upon the purchaser's breach did not equitably estop it from later suing the purchaser); *Graham v. Asbury*, 112 Ariz. 184, 540 P.2d 656 (1975) (state was not estopped from seeking overpayment of salary to an employee because more than one year delay in suing was not intentional and did not constitute culpable negligence).

Where equitable estoppel has been applied against the state, the state's action has been more egregious than it was in the instant case. *See Tucson Electric Power, supra* (referring generally to agency's "wrongful" obstructive conduct in arbitrarily refusing to perform obligations imposed upon it by statute); *Freightways*, 129 Ariz. at 245, 630 P.2d at 541 (equitably estopping the agency from denying the validity of a "motor vehicle certificate" where the agency knew of the defect in the filing of the application, approved numerous transfers of the invalid certificate, and waited over fifty years before challenging the certificate's validity).

This prerequisite of "wrongful conduct" when a government is to be estopped is more clearly enunciated as "affirmative misconduct" in federal cases. Since the Department is complying with a federal regulation in seeking reimbursement, it is appropriate to look to how the federal courts apply the doctrine of estoppel against the federal government in similar situations. Federal courts have adopted requirements for the application of estoppel that are similar to those established under Arizona decisional law. They are:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960). *Compare Freightways, supra.* To apply estoppel against the United States government, two additional factors must be present. First, the government must have engaged in some form of "affirmative misconduct." *See, e.g., Oki v. Immigration and Naturalization Serv.*, 598 F.2d 1160, 1162 (9th Cir.1979). Second, the "injustice caused by the [g]overnment's misconduct [must be] sufficiently severe to outweigh the countervailing interest of the public not to be unduly damaged by the imposition of estoppel." *Beacom v. Equal Employment Opportunity Comm'n*, 500 F.Supp. 428, 435–36 (D.Ariz.1980).

The existence or absence of affirmative misconduct is determined on a case-by-case basis. *Id.* at 436. Initially, we note that a mere inadvertent failure to adjust the amount of food stamps due a recipient does not meet the definition of "affirmative misconduct" as that term is commonly understood. Inadvertence or mistake is just not the same thing as misconduct. We compare

what occurred in the instant case to the fact patterns of other reported decisions to see whether "affirmative misconduct" might somehow be a term of art that would fit what happened in this case.

In *Oki*, the claimant began working without permission from the Immigration and Naturalization Service, in violation of the conditions of his nonimmigrant status. 598 F.2d at 1161. He was deported for this infraction, notwithstanding the fact that the Service had failed to advise him that he had to have permission before he began work. *Id.* at 1162. The court held that this failure was not the sort of affirmative misconduct that would support an estoppel. *Id.*

In *Santiago v. Immigration and Naturalization Serv.*, 526 F.2d 488 (9th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976), the claimants were granted visas which were valid only if each claimant was "accompanying, or following to join" their spouse or parent. *Id.* at 489, citing 8 U.S.C. § 1153(a)(9). Claimant Santiago had entered the United States alone, intending to earn the money necessary to bring his wife to this country. *Id.* at 490. Two years later, in his petition for the admittance of his family, the legality of Santiago's presence in this country was challenged. *Id.* Santiago urged the court to estop the government from deporting him, arguing that the immigration service had failed to inquire concerning his status and had failed to inform him of the regulations. *Id.* at 491–93. In its analysis, the court noted that Santiago did not initially have the right to enter the United States so he lost no right to which he was entitled under the immigration laws. *Id.* at 493. The court also noted that Santiago had not established that the government had a duty to inform him of the rules and regulations. It concluded that the government's actions did not constitute misconduct sufficient to estop it from requiring Santiago to leave the country. *Id.*

*United States v. Ruby Co.*, 588 F.2d 697 (9th Cir.1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979), concerned a claim by the government against certain landowners to some sixteen thousand acres of land. The Department of Interior had originally declined a recommendation from the Surveyor General that the land be properly surveyed. *Id.* at 700. Some years later, the Department did order a survey and discovered that the land actually belonged to the government. *Id.* The court agreed with the landowners that the Department's decision not to resurvey was affirmative conduct. *Id.* at 704. However, the court refused to apply the doctrine of equitable estoppel against the government because it concluded that affirmative misconduct "must be read as requiring an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Id.* at 703–04. The court reasoned that the agency's actions were not *misconduct* because it had provided ample justification for not resurveying the land after learning of allegations that the original survey was flawed. *Id.* at 704. The court concluded that this decision "did not constitute a misrepresentation, concealment or other form of [m]isconduct necessary to support an estoppel against the government." *Id.*

In *California Pacific Bank v. Small Business Admin.* ("SBA"), 557 F.2d 218 (9th Cir. 1977), a bank devised a plan, later deemed illegal, which would increase the bank's protection against defaults on business loans. *Id.* at 219–20, 223. The bank argued that the SBA should have been estopped from claiming that the plan was illegal based on the following alleged affirmative misconduct: (1) the SBA accepted vague cover letters; (2) the SBA failed to reject the first and only clear draft of the proposed plan; and (3) local counsel for the SBA had inspected a loan file which disclosed the plan but had failed to object to it. *Id.* at 224. The court concluded that none of this fit the definition of affirmative misconduct, finding that, "[a]t worst, the agency's actions can be characterized as ambivalent. Implications drawn from silences and failures to respond will not, in this situation, suffice." *Id.*

In cases in which equitable estoppel has been applied against the federal government, the conduct was egregious. For example, in *United States v. Wharton*, 514 F.2d 406 (9th Cir.1975), the government was estopped from refusing to issue a deed when government officers knew that the long-time occupant of

**8**

the land was within the time limit for asserting a claim and advised him to the contrary. In *Sun Il Yoo v. Immigration and Naturalization Serv.,* 534 F.2d 1325 (9th Cir.1976), the government's one-year delay of an investigation to correct a mistake in an alien's immigration status estopped the government from deporting the alien when the government had been advised of its mistake and offered no excuse for the delay.

Although Arizona does not specifically enunciate an "affirmative misconduct" requirement, the courts clearly analyze the state's conduct under an equivalent standard. In the instant case, Carlson has not established that the Department acted in such a manner as to require the imposition of equitable estoppel under either the state or federal standard. We therefore need not consider whether the order for restitution will work a severe injustice in this case. In passing over this point, we do note, however, that regulations exist to ameliorate hardships that result from repayment of inadvertent overissuances of food stamps. *See* 7 C.F.R. §§ 273.18(d)(3)(viii), 273.18(g)(4) and 273.18(g)(4)(ii).

The decision of the Unemployment Insurance Appeals Board is affirmed.

THOMPSON, P.J., and EHRLICH, J., concur.