NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DANIEL RAE WILSON, *Appellant.*

No. 1 CA-CR 21-0251
FILED 4-21-2022

Appeal from the Superior Court in Mohave County
No. S8015CR202001339
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C R U Z**, Judge:

¶1        Daniel Rae Wilson appeals from his convictions and corresponding sentences on two counts of aggravated assault on a peace officer and one count each of resisting arrest, possession of dangerous drugs, possession of drug paraphernalia, criminal damage, and disorderly conduct.  Because he has shown no reversible error, we affirm.

## FACTUAL[1] AND PROCEDURAL HISTORY

¶2        One evening in November 2020, Wilson spent the night at a home in Bullhead City, Arizona.  The next morning, a visibly intoxicated Wilson was "yelling and screaming," trashing the house, including breaking a door, smashing a television, damaging a bedroom wall, kicking a garage door, and damaging lattice on the porch.  Wilson also threatened Chris, who was at the home, and challenged him to a fight.

¶3        Chris called 911, but Wilson left before the police arrived.  When law enforcement located Wilson, he disobeyed the officer's repeated orders to stop.  The officer used his Taser to stun Wilson, but Wilson ran away.

¶4        After police ordered him to stop at gunpoint and sprayed him with pepper spray, Wilson appeared to comply.  But after the officer placed a handcuff on one of his hands, Wilson began fighting with the officer and pinned the officer against a trailer.

¶5        After another officer arrived, they tased Wilson again, causing him to go "limp for maybe a half a second" before again fighting the officers.  The officers were finally able to cuff Wilson when one of the officers laid on top of Wilson's chest.  In a search incident to arrest, officers

---

[1]        We view the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against Wilson.  *See State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1 n.1 (App. 2019).

found about 2.5 grams of methamphetamine and a syringe in Wilson's front pockets. From the encounter with Wilson, one officer suffered a "boxer sprain" to his wrist, elbow, and shoulder. Another officer sustained abrasions on her arm and knees and an injury to her finger.

¶6        A grand jury indicted Wilson on two counts of aggravated assault on a peace officer, class four felonies (counts 1 and 2); resisting arrest, a class six felony (count 3); possession of dangerous drugs, a class four felony (count 4); possession of drug paraphernalia, a class six felony (count 5); criminal damage, a class two misdemeanor (count 6); and disorderly conduct, a class 1 misdemeanor (count 7).

¶7        Counsel was initially appointed to represent Wilson, but soon thereafter he moved to represent himself. After receiving a signed Form 8 and conducting a thorough colloquy, the court granted Wilson's motion and assigned his attorney to serve as advisory counsel. After Wilson repeatedly complained about advisory counsel's performance, another attorney substituted in as advisory counsel, soon replaced by a third attorney. Wilson then filed another motion requesting new advisory counsel, claiming he had not received sufficient communication from the assigned attorneys. At a hearing held a week before trial, Wilson explained his general displeasure with advisory counsel's lack of assistance but concluded that he was prepared to proceed to trial. The third advisory counsel then assisted Wilson throughout trial.

¶8        The court also denied Wilson's motion to appoint (1) an investigator "to conduct interviews to prove character" and (2) an expert to opine on "what drinking a fifth of [liquor] can do to you if you are not a drinker." The State then moved to preclude witnesses Wilson disclosed late, including purported "character" witnesses. At a hearing on the motion, Wilson withdrew all but one of his requested character witnesses: his fiancée, Melissa. After considering Arizona Rule of Criminal Procedure ("Rule") 15.7(c), the court precluded Melissa's testimony. The court rejected Wilson's later attempt to add another character witness.

¶9        In Wilson's opening statement, he explained that his defense was that "[n]one of [his] actions were done with the intention of committing a crime" because they resulted from a "pathologically intoxicated" state. And in closing argument, Wilson asserted that he had "no criminal intent," urging the jurors to consider that he is "not a violent person" although the charges are "violent in nature." Addressing the drug charges, Wilson argued he did not knowingly possess the contraband. He asked the jurors to infer from "common sense" that if he had known he possessed the items,

he would have simply thrown them away while the police were chasing him. Wilson did not call any witnesses at trial and he chose not to testify.

**¶10**　　　　The jury found Wilson guilty as charged. Given his prior criminal history, the court sentenced Wilson as a category-three repetitive offender to a combination of concurrent and consecutive prison terms totaling thirty years. Wilson timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.　　　Requests for New Advisory Counsel, an Investigator, and an Expert Witness

**¶11**　　　　Wilson argues the superior court violated his constitutional right to court access by denying his motions for new advisory counsel, an investigator, and an expert witness, adding he had no access to a law library. We review those rulings for an abuse of discretion. *State v. Gonzales*, 181 Ariz. 502, 510-11 (1995) (advisory counsel and expert witnesses); *State v. Apelt*, 176 Ariz. 349, 366 (1993) (investigators). Wilson did not raise this due process argument in the superior court. Thus, we review that claim for fundamental error resulting in prejudice. *See State v. Escalante*, 245 Ariz. 135, 138, 142, ¶¶ 1, 21 (2018).

　　　A.　　Advisory Counsel

**¶12**　　　　When a defendant in custody exercises the right of self-representation, "the Fifth Amendment guarantee of access to the courts requires that he or she be provided an adequate law library or assistance from someone trained in the law." *State v. Henry*, 176 Ariz. 569, 584 (1993); *see State v. Murray*, 184 Ariz. 8, 28 (1995) ("Because defendants were provided with either advisory counsel or counsel throughout their proceedings, their constitutional right to court access was met, regardless of whether they had personal access to legal materials."). "Due process rights are violated only when a defendant is denied *all* meaningful opportunity to prepare a defense." *Henry*, 176 Ariz. at 584.

**¶13**　　　　Wilson does not dispute that he had advisory counsel the entire time he was self-represented. This assistance of advisory counsel "afforded him the meaningful access required by the constitution." *Id.* "An inmate does not have the right to select his or her preferred means of access." *Id.*

¶14 The record shows Wilson filed motions citing court rules and cases, acknowledged he had Westlaw access, sent subpoenas, and was assisted by legal aide at the jail. Wilson repeatedly informed the court that he was prepared to proceed to trial as scheduled. Wilson has thus not shown he was denied meaningful court access denying him due process.

¶15 Wilson complains his relationship with advisory counsel "was completely and irretrievably broken." But he cites no authority suggesting that he was entitled to new advisory counsel based on a fractured relationship. *Cf. State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004) (explaining courts are generally compelled to appoint new counsel for *represented* defendants "when there is a complete breakdown in communication or an irreconcilable conflict between a defendant and his appointed counsel."). Even for represented defendants, generalized complaints of failure to communicate or lack of trust, such as those Wilson asserts here, do not alone require the appointment of new counsel. *See State v. Riley*, 248 Ariz. 154, 168, ¶ 13 (2020) (failing to communicate); *State v. Paris-Sheldon*, 214 Ariz. 500, 505, ¶ 14 (App. 2007) (losing trust).

¶16 Nor has Wilson shown that others in his advisory counsel's office created an impermissible conflict. To the extent a *pro se* defendant has a right to conflict-free advisory counsel, there was no impermissible conflict here. *Cf. State v. Sustaita*, 183 Ariz. 240, 243 (App. 1995) ("[S]omething more than a mere showing of prior representation of a victim is required before the entire public defender's office is disqualified from representing a defendant."). And Wilson has not identified which witnesses may have posed a conflict or established that an actual conflict of interest existed, let alone a conflict that compromised advisory counsel's assistance. *Cf. State v. Moore*, 222 Ariz. 1, 16, ¶ 82 (2009) ("To succeed on a conflict of interest claim, a defendant must prove the existence of an actual conflict that adversely affected counsel's representation.").

B. Investigator and Expert Witness

¶17 An indigent defendant is entitled to appointment of investigators and expert witnesses when "such assistance is reasonably necessary to adequately present a defense at trial." Ariz. R. Crim. P. 6.7(a). *See also Jacobson v. Anderson*, 203 Ariz. 543, 545, ¶ 5 (App. 2002) ("[D]ue process requires the appointment of expert witnesses for an indigent defendant when such testimony is reasonably necessary to present an adequate defense."). Determining reasonable necessity is within the court's discretion. *Jones v. Sterling*, 210 Ariz. 308, 315, ¶ 29 (2005). We will not disturb the court's refusal to appoint investigators and experts absent

substantial prejudice. *State v. Apelt*, 176 Ariz. at 366. "Mere undeveloped assertions that the requested assistance would be beneficial are not enough." *Id.* (citation and internal quotation marks omitted).

**¶18** Wilson's motion did not describe with any particularity the need for his requests and thus failed to meet the reasonable necessity threshold. *See id.* at 365-66. And his expert witness request, on its face, was based on presenting an impermissible voluntary intoxication defense. *See* A.R.S. § 13-503 (barring voluntary intoxication as a defense).[2] Thus, the superior court did not abuse its discretion by denying Wilson's requests for an investigator and an expert witness.

II.     Preclusion of Character Witnesses

**¶19** Wilson next argues the superior court hindered his constitutional right to present a defense by precluding his late disclosed character witnesses. He first contends he timely disclosed his witnesses because he had provided his list seven days before trial, in accordance with the final disclosure deadline set forth in Rule 15.6. Alternatively, he asserts preclusion was not warranted as a sanction for any late disclosure.

**¶20** Determining "whether a disclosure violation has occurred and the propriety of sanctions are within the sound discretion of the trial court." *State v. Trujillo*, 227 Ariz. 314, 320, ¶ 25 (App. 2011); *see* Ariz. R. Crim. P. 15.7(c) (authorizing courts to sanction parties for disclosure violations). We review the court's determination for an abuse of discretion, granting "considerable deference to the trial court's perspective and judgment." *Trujillo*, 227 Ariz. at 320, ¶ 25 (citation and internal quotation marks omitted). Because Wilson raises his due process argument for the first time on appeal, we apply fundamental error review to that claim. *See Escalante*, 245 Ariz. at 138, 142, ¶¶ 1, 21.

**¶21** By rule, a defendant must timely disclose an intent to present a good character defense. Ariz. R. Crim. P. 15.2(b)(1). Defendants must simultaneously disclose the name and address of any witness, other than the defendant, who will testify at trial supporting the defense. Ariz. R. Crim. P. 15.2(b)(1), (2). As applicable here, such disclosures are required by the earlier of "40 days after arraignment, or 10 days after the State's disclosure." Ariz. R. Crim. P. 15.2(d)(1).

---

[2]     Wilson never asserted that he involuntarily consumed alcohol, nor did he request an involuntary intoxication jury instruction.

**¶22** Wilson delivered his witness list disclosure several months after the Rule 15.2 deadline had passed. Wilson cannot rely on Rule 15.6(c) (which addresses final disclosures) in arguing the contrary. Rule 15.6 imposes on the parties a continuing duty to disclose more information as soon as it is discovered but that duty is only implicated *after* the parties have complied with their initial disclosure obligations. *See State v. Burns*, 237 Ariz. 1, 23, ¶ 93 (2015). Wilson may not circumvent his Rule 15.2 obligations under the guise of Rule 15.6 compliance; otherwise, Rule 15's initial disclosure duties would be rendered meaningless.

**¶23** Nor has Wilson shown that preclusion was unduly harsh. The proposed character evidence was not at all relevant to the drug charges and thus had no impact on those convictions. For the remaining charges, Wilson has not shown that the court's ruling violated the standard in *State v. Smith*, 123 Ariz. 243, 252 (1979) (before precluding a witness, courts consider (1) the witness' importance to the proponent's case, (2) whether the proposed testimony will surprise or prejudice the opposing party, (3) whether bad faith or willfulness motivated the late disclosure, and (4) any other relevant circumstances.).[3]

III. Exclusion of the 911 and Dispatch Calls

**¶24** Wilson argues the court erred in excluding the 911 and dispatch calls. We review evidentiary rulings for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). Because Wilson raises his constitutional claim for the first time on appeal, our review is limited to reviewing for fundamental error. *Escalante*, 245 Ariz. at 138, 142, ¶¶ 1, 21.

**¶25** The State argues any error in excluding the calls was harmless because they "would have only further corroborated the State's case" or "would have been cumulative of the other evidence adduced at trial—evidence which Wilson did not actually contest." Wilson asserts the error was "not harmless" but fails to address the inculpatory nature of the

---

[3] Wilson argues, and the State agrees, the superior court erroneously concluded that the proposed good character evidence was inadmissible absent an initial attack on Wilson's character. We concur with the parties. *See* Ariz. R. Evid. 404(a)(1); *State v. Rhodes*, 219 Ariz. 476, 478-79, ¶ 10 (App. 2008). The court's error notwithstanding, for the reasons we discuss above, the record supports the preclusion sanction. *See State v. Wassenaar*, 215 Ariz. 565, 577, ¶ 50 (App. 2007) ("We may affirm on any basis supported by the record.").

evidence, or to explain how any of the excluded statements would have benefitted the defense.

**¶26**     Admitting the calls would have bolstered the evidence supporting Wilson's guilt. In the first 911 call, the caller described Wilson's damaging the house and hearing Charity tell Wilson not to hurt her. The second and third 911 calls, a few minutes later, had the caller again describing Wilson's damaging the house and, in the third, asking why the police had not yet arrived. The dispatch recordings included statements like "physical domestic," that Wilson had been "beating his girlfriend in the bedroom" and damaging the house. An officer reported that she found an empty holster at the residence, and other officers noted that Wilson may be armed.

**¶27**     Wilson suggests the evidence would have shown the dispatcher incorrectly conveyed that "he had reportedly been violent with his girlfriend," leading to the "police overreacting with excessive physical force against him." But Chris had reported that he heard Charity tell Wilson not to hurt her and that Wilson had been threatening the residents. In any event, Wilson did not present an excessive force justification defense, nor did he request an excessive force jury instruction under § 13-3881(B). *See* A.R.S. § 13-404(B)(2) (resisting arrest may be justified when an officer uses excessive force); *State v. Matthews*, 245 Ariz. 281, 286, ¶ 17 (App. 2018) ("[E]xcessive force instruction under § 13-3881(B) is appropriate only when the defendant claims his resistance was justified by an officer's excessive use of force.").

IV.     Judicial Bias

**¶28**     Wilson further claims the trial judge was biased against him, causing structural error mandating reversal. Along with citing rulings adverse to him, including those discussed above, Wilson claims the judge was "rude and repeatedly expressed impatience." Wilson has shown no structural error. *See State v. Granados*, 235 Ariz. 321, 325, ¶ 11 (App. 2014) (to show structural error based on a judicial bias claim, a defendant "must allege a type of bias that would implicate his due process rights, such as bias based on a direct, personal, substantial pecuniary interest") (citation and internal quotation marks omitted).

**¶29**     A defendant has the constitutional right to a fair and impartial judge. *Ellison*, 213 Ariz. at 128, ¶ 35. "A trial judge is presumed to be free of bias and prejudice." *State v. Hurley*, 197 Ariz. 400, 404, ¶ 24 (App. 2000) (citation and internal quotation marks omitted). "To rebut this

presumption, a party must set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced." *State v. Medina*, 193 Ariz. 504, 510, ¶ 11 (1999). Judicial rulings alone rarely support a finding of bias or partiality absent proof of an "extrajudicial source of bias or any deep-seated favoritism." *Ellison*, 213 Ariz. at 129, ¶ 40 (citation and internal quotation marks omitted).

**¶30** Wilson concedes in his reply brief that he identified "no extreme examples of rudeness or impatience on behalf of the court." Nor does Wilson's argument that the trial judge was impatient with him show judicial bias. *See State v. Bible*, 175 Ariz. 549, 595 (1993). Thus, he has not shown error.

V.     Asserted Improper Opinion Testimony

**¶31** Wilson argues unobjected-to testimony on redirect examination of an officer constituted fundamental error resulting in prejudice. Specifically, he contends the State elicited improper opinion testimony "going to the ultimate issue of whether or not the officers use of force was excessive or appropriate." The testimony he cites was of an arresting officer on cross-examination, when he was trying to show the officer had used the taser unnecessarily:

> Q.     I'm just going according to the police report. You guys were both off of me. I'm facing away from you. And you shock me in the back with a taser [six] seconds. Is that correct?
>
> A.     I don't know how long it was. [The taser] was ineffective. My department did an investigation, like they always do [when we] use force, and they found that I used the proper force for what the arrest was.

**¶32** Wilson did not object or move to strike the answer about the investigation. On redirect, the State asked the officer:

> Q.     Okay. And you also mentioned that this case was reviewed by somebody in your department?
>
> A.     Anytime [sic] we use force, the supervisor reads the report. He follows up with a memo. He looks at the policy. And he sees if we use the proper level of force for the resistance that we're getting from a suspect.

Q.      And your supervisor looked at this report and said you used the proper use of level of force in this case?

A.      Yes.

¶33      Wilson asserts the State's redirect improperly provided opinion testimony.   But he elicited the same information on cross-examination and made no objection on redirect, thus waiving the issue.  *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.").   And because the redirect testimony was cumulative, Wilson has shown no prejudice.  *See Escalante*, 245 Ariz. at 142, ¶ 21; *cf. Granados*, 235 Ariz. at 329, ¶ 35 (admitting cumulative evidence constitutes harmless error).   And to the extent there was any error in the redirect, Wilson's cross-examination invited that error during cross-examination.  *State v. Kemp*, 185 Ariz. 52, 60-61 (1996) ("[T]he open door or invited error doctrine means that a party cannot complain about a result he caused.") (citation and internal quotation marks omitted).

VI.      Prosecutorial Error Claim

¶34      Wilson claims several instances of alleged prosecutorial error cumulatively deprived him of a fair trial.  He cites: (1) eliciting opinion testimony that an officer had not used excessive force when arresting Wilson; (2) not disclosing information that the police conducted a use of force review in Wilson's case; and (3) improperly objecting when Wilson introduced the 911 calls and a photograph contrary to pretrial stipulations. To successfully show prosecutorial error, Wilson must show "the prosecutor's [error] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Murray*, 250 Ariz. 543, 548, ¶ 13 (2021) (citation and internal quotation marks omitted).  Put differently, he must show "a reasonable likelihood exists that the [prosecutorial error] could have affected the jury's verdict, thereby denying defendant a fair trial." *Id.* (citation and internal quotation marks omitted).

¶35      As noted above, the prosecutor committed no error in eliciting the officer's cumulative testimony on redirect examination.  Nor has Wilson shown any disclosure errors.  Contrary to Wilson's contention that the officer "admitted that his supervisor had investigated the matter for discipline," the officer testified only that the police department reviewed his use of force against Wilson as a matter of routine policy; he never stated that a disciplinary investigation had begun.  And Wilson does not explain how a use of force review concluding the officer had used an

appropriate level of force constitutes favorable evidence the State needed to disclose.

¶36        Wilson is correct that the prosecutor objected, contrary to his earlier stipulations, when Wilson introduced the 911 calls and a photograph.   But those objections did not cause an unfair trial.   As discussed above, excluding the 911 and dispatch calls could not have affected the verdicts.   Likewise, rejecting the photograph (of Wilson handcuffed following his arrest) did not impinge on the fairness of his trial. Several similar photographs were admitted depicting Wilson in restraints. For these reasons, Wilson has not carried his burden to show cumulative fundamental error.  *See State v. Vargas*, 249 Ariz. 186, 188, ¶ 1 (2020).

## CONCLUSION

¶37        For these reasons, we affirm Wilson's convictions and sentences.

