NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RONALD F. STEVENSON, et al., *Appellants,*

*v.*

ARIZONA CORPORATION COMMISSION, *Appellee.*

No. 1 CA-CV 23-0099

FILED 12-05-2023

Appeal from the Superior Court in Maricopa County
No. LC2022-000130-001
The Honorable Daniel J. Kiley, Judge (retired)

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Robert D. Mitchell & Christopher J. Waznik
*Counsel for Appellants*

Arizona Corporation Commission, Phoenix
By Elizabeth M. Schmitt
*Counsel for Appellee*

------

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge D. Steven Williams and Judge Samuel A. Thumma joined.

------

**M c M U R D I E**, Judge:

**¶1**        Ronald Stevenson, American Financial Security, LLC, and American Financial Investments, LLC appeal the superior court's affirmation of the Arizona Corporation Commission's ("Commission") order revoking investment adviser licenses,[1] imposing administrative penalties, and awarding around $19 million in restitution. We find no reversible error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Stevenson and his late spouse[2] owned and operated American Financial Security, LLC and American Financial Investments, LLC ("Companies"). Through the Companies, the Stevensons offered insurance products, tax services, retirement planning, and investment advisory services. The Companies had the same office address, shared the same website, and jointly advertised their services.[3]

**¶3**        Stevenson was licensed as an Arizona insurance producer in 2002. In 2016, he was licensed as an investment adviser representative. But Stevenson was not registered with the Commission as a securities salesperson.

**¶4**        Between 2012 and 2019, Stevenson introduced his clients to debentures issued by companies associated with EquiAlt, LLC. Stevenson

------

[1]        *See* A.R.S. § 44-3151 *et seq*.

[2]        Barbara Stevenson was a named party to this action until she passed away in September 2020.

[3]        Because Stevenson and the Companies were found jointly and severally liable before the Commission, for simplicity, we call Stevenson the singular appellant and attribute his actions through the Companies to him.

explained that EquiAlt was flipping, leasing, and purchasing real estate. He informed his clients that they would receive about an eight percent return on EquiAlt investments and assured them it was a safe investment. Stevenson also informed his clients that they could liquidate investments in EquiAlt quickly and without penalties.

¶5          Stevenson's clients had little or no investment experience and low-risk tolerance. Many of his clients were 70 or older. Although Stevenson gave his clients some EquiAlt documents, some testified they could not read the paperwork before signing. Still, between 2012 and 2019, Stevenson helped his clients buy at least 254 EquiAlt debentures for a total investment of more than $19 million. Stevenson received over $2 million in commissions on these investments.

¶6          In February 2020, the United States Securities and Exchange Commission ("SEC") filed a complaint against EquiAlt, alleging that it was a Ponzi scheme. The federal court appointed a receiver who froze EquiAlt's assets pending the action's disposition.

¶7          In June 2020, the Securities Division ("Division") of the Commission filed a notice of opportunity for hearing for the Stevensons and the Companies for alleged violations of A.R.S. §§ 44-1801 *et seq.* and 44-3101 *et seq.* The Division alleged that the Stevensons sold unregistered securities, illegally sold securities as unregistered salespeople, and committed fraud by misrepresenting (1) the investments' risk, (2) the liquidity, and (3) that the Stevensons were not receiving commissions for the sales of the EquiAlt debentures. The Division also argued that the Stevensons engaged in dishonest or unethical conduct as investment advisers by failing to disclose their commissions to their clients. The Division proposed orders for restitution, administrative penalties, revocation of licenses, and to cease and desist further violations.

¶8          The Commission held a six-day hearing in April 2021. After the hearing, the Commission concluded that "the EquiAlt Debentures are securities," Stevenson had "offered and sold securities within the meaning of A.R.S. § 44-1801[,]" he "violated A.R.S. § 44-1841 by offering and selling securities that were neither registered nor exempt from registration[,]" and he violated A.R.S. § 44-1842 by offering and selling securities while not being registered as a dealer or salesperson.

¶9          The Commission also concluded that Stevenson had "committed fraud in the offer and sale of securities, in violation of A.R.S. § 44-1991," finding fraud in Stevenson's (1) "failure to disclose and to

misrepresent the commissions received for the sale of EquiAlt Debentures to investors," (2) "misleading statements or omissions to some investors concerning their ability to liquidate the EquiAlt Debentures prior to term and penalties related to early withdrawal[,]" and (3) "omitting to disclose to investors the civil lawsuits and judgments against them and omitting to disclose and misrepresenting those lawsuits on a Form ADV Disclosure to investors[.]" The Commission rejected Stevenson's equitable estoppel defense, finding it "would cause serious injustice for EquiAlt investors and the public interest." Finally, the Commission imposed joint and several liability on the Stevensons and the Companies under A.R.S. § 44-1999.

¶10            The Commission ordered that the Stevensons should cease and desist further violations and ordered them to pay restitution "in the principal amount of $19,459,875." The Commission revoked Stevenson and the Companies' licenses under A.R.S. § 44-3201(13) and A.A.C. R14-6-203(11) "based on their unethical and dishonest behavior in securities dealings." And under A.R.S. §§ 44-2036, 44-3296, and 44-3201, the Commission imposed administrative penalties of $275,000, including "multiple violations of A.R.S. §§ 44-1841, 44-1842, [and] 44-1991."

¶11            Stevenson appealed the decision and order to the superior court. Among other things, he argued: (1) equitable estoppel precluded a finding that he had illegally sold unregistered securities; (2) the Commission's fraud findings lacked substantial evidence; (3) the restitution amount ordered was unconstitutional and contrary to law; and (4) the Commission abused its discretion by imposing the administrative penalties. After briefing and oral argument, the superior court reduced the restitution award total to exclude the amount reflecting the Stevensons' investment in EquiAlt but otherwise affirmed the Commission's decision.

¶12            Stevenson appealed to this court, and we have jurisdiction under A.R.S. §§ 12-913, 12-120.21(A)(1), and 12-2101(A)(1). *See Svendsen v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014).

## DISCUSSION

¶13            We will affirm an administrative decision unless it was "illegal, arbitrary, capricious or involved an abuse of discretion." *See Hirsch v. Ariz. Corp. Comm'n*, 237 Ariz. 456, 461–62, ¶ 18 (App. 2015) (quoting *Eaton v. Ariz. Health Care Cost Containment Sys.*, 206 Ariz. 430, 432, ¶ 7 (App. 2003)). We view the facts in the light most favorably to upholding the decision. *Eaton*, 206 Ariz. at 431, ¶ 2. We do not reweigh the evidence but

determine whether substantial evidence supports the decision. *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 409, ¶ 35 (App. 2003).

## A.      The Stevensons Were Salespeople According to A.R.S. § 44-1842.

**¶14**      The Commission found that the Stevensons violated A.R.S. §§ 44-1841 and 44-1842. Whereas section 44-1841 makes it unlawful "to sell or offer for sale" unregistered securities in Arizona, section 44-1842 makes it unlawful for "any dealer to sell or purchase or offer to sell or buy any securities, or for any salesman to sell or offer for sale any securities within or from this state unless the dealer or salesman is registered."

**¶15**      Stevenson argues that "[t]he Commission wrongfully found [the Companies] and Mr. Stevenson are salesmen of EquiAlt." He claims that "the Commission actually made no findings of facts to support the conclusion" and distinguishes between being a "salesman" of EquiAlt within A.R.S. § 44-1842 and merely transacting in the EquiAlt debentures.

**¶16**      The Commission counters that this argument should be "forfeited and waived," as it was raised for the first time in the Stevensons' reply brief before the superior court. *See Univ. Med. Ctr. of S. Nev. v. Health Choice Ariz.*, 253 Ariz. 524, 529, ¶ 22, n.2 (App. 2022). The superior court agreed, finding the argument waived. Stevenson responds that "[t]he Division has the burden of proof to show violations of securities laws" and that the Stevensons "cannot 'waive' the argument that an essential element was not proven[.]"

**¶17**      We agree with Stevenson that the issue has not been waived. Though a party must generally preserve its arguments for appeal, we will not affirm a finding of a statutory violation if the statutory elements have not been alleged or supported by evidence. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("[W]e are not necessarily limited to the arguments made by the parties if that would cause us to reach an incorrect result.") (cleaned up).

**¶18**      "Salesman" is defined in A.R.S. § 44-1801(23) as "an individual, other than a dealer, employed, appointed or authorized by a dealer to sell securities in this state." And here, the parties agree that EquiAlt is a dealer of securities. Thus, the relevant question is whether substantial evidence establishes EquiAlt "appointed or authorized" the Stevensons to sell securities in Arizona. *See* A.R.S. § 44-1801(23). We conclude that it does.

**¶19**         Stevenson purports to distinguish between a "salesman" and a "third-party intermediary." Though Stevenson does not define his terms, he claims that he "only referred individuals to EquiAlt and [was] not paid directly by EquiAlt" and that he "certainly could not be considered an employee or agent" of EquiAlt. Even if such a distinction exists, it is irrelevant here because Stevenson need not be an "employee or agent" to have been "appointed or authorized" by EquiAlt to sell the debentures. *See* A.R.S. § 44-1801(23).

**¶20**         Stevenson asserts that whether he was "appointed or authorized" should depend on "whether [he] had the ability to sell the EquiAlt Debentures on EquiAlt's behalf." But Stevenson's definition undermines his claim because the Commission found that the Stevensons "sold at least 254 EquiAlt Debentures to their clients[.]" And the Commission concluded that the Stevensons violated A.R.S. § 44-1841 "by offering and *selling* securities" (emphasis added), a determination that Stevenson does not challenge on appeal. Furthermore, given the seven years of debenture sales and the multiple email communications between EquiAlt and Stevenson in the record, the Stevensons conducted these sales with EquiAlt's permission and cooperation.

**¶21**         We conclude that the Commission did not abuse its discretion by finding that the Stevensons were unregistered salespeople under A.R.S. § 44-1842.

## B.         Substantial Evidence Supports the Commission's Fraud Findings.

**¶22**         Under A.R.S. § 44-1991, sellers of securities may not "[m]ake any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made . . . not misleading." A.R.S. § 44-1991(A)(2). A fact is material if, under the circumstances, the fact "would have assumed actual significance in the deliberations of the reasonable shareholder." *Caruthers v. Underhill*, 230 Ariz. 513, 524, ¶ 43 (App. 2012). Materiality is generally a fact question, but we review materiality as a matter of law "where the information is so obviously important or unimportant to an investor that reasonable minds could not differ on the question of immateriality." *Id.* (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)).

**¶23**         The Commission found that the Stevensons materially misled clients as to four facts: (1) whether the Stevensons received commissions for sales of the EquiAlt debentures, (2) the risk of the investments, (3) the liquidity of the investments, and (4) the existence of prior civil lawsuits and

judgments against the Stevensons. Stevenson challenges the validity of each finding.

### 1. The Commission Did Not Err by Finding that the Stevensons Misrepresented that They Would Receive Commissions for the Debenture Sales.

¶24 Stevenson argues there was "simply no need" to disclose that he received commissions because the Companies' "business model was receiving commissions and finder's fees for referring clients." He concludes that all his clients would have already known that he received commissions and that he could not have misled his clients by failing to disclose this fact.

¶25 The Commission responds by pointing to the debenture subscription agreement, which states, "[t]he Units are being sold through the Company without commissions." It argues that even if investors believed that the Stevensons generally received commissions in their line of work, the plain text of the agreement would lead "a reasonable investor [to] believe [the Stevensons] were not paid a commission" on these sales. The Commission also identifies "eleven instances in the record where investors testified Stevenson either failed to tell them he received a commission or affirmatively stated he did not receive a commission."

¶26 Substantial evidence to affirm an agency decision exists "if either of two inconsistent factual conclusions are supported by the record." *E. Vanguard Forex, Ltd.*, 206 Ariz. at 409, ¶ 35 (citing *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336 (App. 1984)). We agree with the superior court that the record substantially supports the Commission's determination that Stevenson misrepresented the commission received for the debenture sales. As a result, to prevail on appeal, Stevenson cannot merely present contrary evidence showing that he did not make misrepresentations; he must also refute the Commission's evidence. *See E. Vanguard Forex, Ltd.*, 206 Ariz. at 409, ¶ 35.

¶27 Stevenson tries to downplay the relevance of the debenture subscription agreement, claiming that the agreement is "provided by EquiAlt to investors and is not a disclosure document of [the Stevensons]." But this argument fails. EquiAlt may have authored the agreement, but Stevenson delivered the agreement to his clients. And because the agreement reflected that the debentures "are being sold through [EquiAlt] without commissions," Stevenson had a duty to clarify the situation to his clients to avoid misleading them. *See* A.R.S. § 44-1991(A)(2) (Fraud can arise by omission.); *cf. U.S. Sec. and Exch. Comm'n v. Levine*, 671 F. Supp. 2d 14,

29–30 (D.D.C. 2009) (The failure to disclose a commission in an unregistered security offering is a misrepresentation.).

**¶28** Stevenson also purports to distinguish between a "finder's fee" and a commission. But the superior court directly asked Stevenson whether there was a distinction between these two terms. He replied, "I don't know that there's a distinction for purposes of the amount or the fact that they were compensated." It is waived here because Stevenson failed to develop this argument below. *See Ramos v. Nichols*, 252 Ariz. 519, 523, ¶ 11 (App. 2022).

**¶29** We conclude that the Commission's fraud finding about the commissions was supported by substantial evidence and was not illegal, arbitrary, capricious, or an abuse of discretion.

> **2. The Commission Did Not Err by Finding that the Stevensons Misrepresented the Risk of the Debenture Investment.**

**¶30** Stevenson argues that he did not mislead investors about the risk of investing in the debentures. He claims that "none of [the witnesses] testified that [Stevenson] misled them in any way about the nature of the EquiAlt Debentures," and there is "no evidence" that he misled them "about what they were getting into, including the risk involved." He also argues that any misrepresentations or omissions in his oral statements were cured by EquiAlt's documents disclosing the risk involved.

**¶31** The Commission counters that "[t]he fact that the EquiAlt Subscription Agreement correctly stated that the Debentures were risky does not absolve Appellant Stevenson from lying to investors." It argues that Stevenson's many oral claims that the investment was "100% safe," "not risky," and "risk free," established a violation of A.R.S. § 44-1991, noting that "the Securities Act does not make any allowance for whether a more sophisticated investor might have realized the oral statement was untrue by comparing it to a contrary written statement."

**¶32** We agree with the Commission. Nothing in A.R.S. § 44-1991 requires an investor to investigate or weigh contrary evidence to determine that the information provided by the securities seller is true. Instead, the statute protects the investor by placing a "heavy burden upon the offeror not to mislead potential investors in any way." *See Trimble v. Am. Sav. Life Ins. Co.*, 152 Ariz. 548, 553 (App. 1986). Even if the EquiAlt paperwork disclosed the investment risk, substantial evidence supports the Commission's finding that Stevenson made contrary misleading statements to his clients.

¶33 Stevenson also argues that the Commission unjustifiably based its fraud finding not on any misrepresentation of risk in the investment but on failing to foresee harm caused by "secret management issues" and "covert misconduct" within EquiAlt. He asserts this was error because "[r]equiring Appellants to assess risk based on covert misconduct of a third party, and holding Appellants liable for their failure to do so, would be hugely unfair."

¶34 But this argument mischaracterizes the Commission's finding. Stevenson raised his concerns in his post-hearing brief. Still, the Commission found that Stevenson's assurances to his clients were "contrary to language in EquiAlt's Subscription Agreement, which described the EquiAlt Debentures as a 'highly speculative' investment[.]" The Commission thus determined that "[t]he evidence establishes that Respondent Stevenson misrepresented or omitted to disclose the risk involved in the EquiAlt Debentures *at the time the investment was being offered or sold*." (Emphasis added.) Thus, the Commission's finding was not directed toward the unforeseeable risk that EquiAlt's principals would commit misconduct. It was directed toward the risk inherent to the economic instability of a "highly speculative" investment. Because the Commission found that the Stevensons had misrepresented the investment risk at the point of sale, Stevenson's suggestion that the unforeseeable bad acts of EquiAlt formed the basis for the Commission's decision is unfounded.

### 3. The Commission Did Not Err by Finding that the Stevensons Misrepresented the Liquidity of the Investments.

¶35 Stevenson claims there is no evidence that he misled any investors about their ability to withdraw funds from the EquiAlt investment. He acknowledges that he told clients they could liquidate their investments after a short period. Still, he argues that these statements were not untrue or misleading because they were true when they were made. He alleges that EquiAlt changed its liquidation policy afterward, in 2019, and that the Stevensons introduced no one new to EquiAlt after the policy change.

¶36 But Stevenson's argument is belied by the record. EquiAlt's private placement memorandum, dated May 2013, states that EquiAlt "has the legal right, but not the obligation, to repurchase the Debentures prior to their maturity date." And the subscription agreement, signed by one investor in 2012, shows that "the Subscriber may not be able to liquidate his, her or its investment[.]" Thus, even if EquiAlt's policies changed in

2019, substantial evidence from before that change supports the Commission's findings that the Stevensons failed in their "affirmative duty not to mislead investors by making statements that were inconsistent with" EquiAlt's documents.

### 4. The Commission Did Not Err by Finding the Stevensons' Failure to Disclose Civil Judgments Against Them Was a Material Misrepresentation.

¶37 Stevenson admits that the Stevensons failed to disclose past civil lawsuits to their clients. But he maintains that this does not violate A.R.S. § 44-1991 because (1) the lawsuits were not material, and (2) the Stevensons had no duty to disclose the lawsuits because they do not fall within the SEC's examples of presumptively material civil actions.

¶38 Stevenson highlights that no witness offered meaningful testimony about the civil suits. As he notes, "[t]here is nothing in the record to suggest that . . . [his] clients would not have entered into the EquiAlt Debentures, had they known about the civil actions."

¶39 But Stevenson's clients' subjective testimony is not dispositive, as the Commission assesses materiality under an objective standard. *See Caruthers*, 230 Ariz. at 524, ¶ 43. The Commission found that the lawsuits "would have been significant to a reasonable buyer in their deliberation process to invest and would have been material to the decision-making process." We affirm materiality determinations unless "the information is so obviously important or unimportant to an investor that reasonable minds could not differ on the question of immateriality." *See id.* And Stevenson does not offer or develop a convincing argument that *no* reasonable mind could conclude that a civil garnishment judgment against him would matter to a potential investor.

¶40 Stevenson also cites SEC guidelines outlining which civil actions are considered "presumptively material" for disclosure. For instance, the SEC directs that where investment advisers have been involved in investment-related misconduct, those advisers must disclose those civil actions in their brochures. *See* SEC, Form ADV, Uniform Application for Investment Advisor Registration and Report by Exempt Reporting Advisors, Part 2A of Form ADV: Firm Brochure, item 9 (updated Aug. 2022). *See generally* 15 U.S.C. § 80b-3(c); 17 C.F.R. § 275.203-1(a) (establishing Form ADV as required for investment adviser registration application). Because the Stevensons' past civil actions do not fall into the "presumptively material" category, Stevenson argues that he had "no

duty" to disclose them, and the Commission erred by finding his past civil judgments were material.

**¶41**        Contrary to that argument, the SEC's guidelines make clear that they "do not contain an exclusive list of material disciplinary events." Form ADV at Part 2A, item 9. Moreover, the fact that the judgments do not fall into the presumptive category does not preclude the Commission from finding that they are material. On appeal, we defer to such a finding.

**¶42**        We conclude that the Commission's findings of fraud were supported by substantial evidence and were not illegal, arbitrary, capricious, or an abuse of discretion.

## C.        The Commission Did Not Err by Declining to Apply Equitable Estoppel.

**¶43**        "Equitable estoppel is a rule of justice which, when all its elements are met, prevails over all other rules." *Carlson v. Ariz. Dep't of Econ. Sec.*, 184 Ariz. 4, 5 (App. 1995) (citing *Freightways, Inc. v. Ariz. Corp. Comm'n*, 129 Ariz. 245, 247 (1981)).[4] "The essence of estoppel is conduct inconsistent with a later-adopted position." *Thomas and King, Inc. v. City of Phoenix*, 208 Ariz. 203, 210, ¶ 27 (App. 2004). Equitable estoppel generally applies when there is "(1) conduct by which one induces another to believe in certain material facts; and (2) the inducement results in acts in justifiable reliance thereon; and (3) the resulting acts cause injury." *Carlson*, 184 Ariz. at 5 (citing *Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 61 (1986)).

**¶44**        Equitable estoppel ordinarily may not be invoked against the government. *Freightways,* 129 Ariz. at 247. Equitable estoppel may only apply against the state "if the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel." *Carlson*, 184 Ariz. at 6 (citing

---

[4]        We note that *Carlson*'s four-element standard for equitable estoppel has been questioned by our supreme court. *See Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 577, ¶ 36, n.16 (1998). *Valencia* applied a three-element approach and noted "[t]he affirmative misconduct standard adopted in *Carlson* may conflict with *Freightways*." *Id.* The supreme court did not explicitly overrule *Carlson*, but because Stevenson would not prevail under either standard, we need not decide whether the *Carlson* approach remains good law.

*Tucson Elec. Power Co. v. Ariz. Dep't of Revenue*, 174 Ariz. 507, 516 (App. 1992)).

¶45　　At his hearing, Stevenson testified that when the Division investigated the Companies, Stevenson asked "if everything was okay with EquiAlt," whether he needed additional licensing, and whether he should cease working with EquiAlt. He claims that, in 2013, Division representatives "affirmatively told [him] that if there was a problem, the Division would contact him." And because the Division did not follow up with Stevenson or address this issue again after its second investigation in 2016, Stevenson argues that he justifiably relied on the Division's silence as a condonation of his actions. Thus, he states the Commission should be estopped from penalizing him. He argues, "[i]t was entirely unjust for the Division, eight full years later . . . to reverse its prior position on these registration issues and claim that Mr. Stevenson and [the Companies] were in violation of the registration statutes."

¶46　　Still, the Commission found that Stevenson did not sufficiently prove the estoppel elements. The first element, inducement, requires "affirmative acts" with "some considerable degree of formalism" beyond a mere "off-the-cuff opinion," where answering "requires a measure of research or deliberation." *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 577, ¶ 36 (1998). Verbal communication is typically insufficient, *see id.,* and equitable estoppel will not apply against the government based on mere negligence of government employees, *see Carlson*, 184 Ariz. at 6. "Thus, the government generally can enforce a law even if its employees have not always correctly applied it in the past." *Thomas and King*, 208 Ariz. at 210, ¶ 27.

¶47　　Here, Stevenson argues that he relied on conversations with Division employees from 2013 and 2016. Even if true, such statements would not support an equitable estoppel defense. *See Valencia*, 191 Ariz. at 577, ¶ 36. And though Stevenson testified he was "confused" after his phone call with the Division, the Commission noted that—rather than asking the Division itself for clarification—he decided to ask EquiAlt officers or their attorneys and "relied on them for guidance." Thus, Stevenson's testimony shows reliance not upon the Division but on EquiAlt's representations. The Commission correctly found that Stevenson "failed to show the Division's conduct induced [him] to continue to sell EquiAlt Debentures."

¶48　　The second estoppel element "demands both that the party claiming estoppel actually relied on the state's act and that such reliance

was reasonable under the circumstances." *Valencia*, 191 Ariz. at 577, ¶ 37. Such reliance must be prospective. *Id.* Because "by [Stevenson's] own admission, [he] began marketing EquiAlt Debentures before his alleged conversations with Division representatives about EquiAlt in 2013 and [2016]," he cannot claim that he only began marketing the debentures relying on the Division's comments.

**¶49**      The Commission also found that Stevenson's purported reliance on the Division's silence was unreasonable. "[R]eliance should be considered reasonable if a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." *Freightways*, 129 Ariz. at 247. Stevenson cannot claim to "not have been put on notice to make further inquiries," *see id.* (cleaned up), because his conversation with the Division ended with him being "confused," expecting more contact by the Division.

**¶50**      Finally, the Commission declined to apply estoppel because "the imposition of estoppel would cause a serious injustice for EquiAlt investors and the public interest in protecting such investors." "[E]stoppel may apply against the state only when the public interest will not be unduly damaged." *Valencia*, 191 Ariz. at 578, ¶ 40 (citing *Freightways*, 129 Ariz. at 248).

**¶51**      We conclude that the Commission correctly declined to apply the equitable estoppel doctrine.

## D.      The Commission's Restitution Award Was Not Illegal, Arbitrary, Capricious, or an Abuse of Discretion.

**¶52**      Stevenson challenges the $19 million restitution order. He argues that (1) the Commission improperly defined "restitution" as it is used in A.R.S. § 44-2032(1), leading to an incorrect calculation of the award, (2) the amount imposed violates constitutional protections against excessive fines, and (3) the applicable statutes and administrative code are unconstitutionally vague.

**¶53**      When presented with an apparent violation of the Securities Act, the Commission is authorized "to take appropriate affirmative action . . . to correct the conditions resulting from the act, practice or transaction including, without limitation, a requirement to provide restitution as prescribed by rules of the commission." A.R.S. § 44-2032(1). Stevenson and the Commission disagree on the meaning of the term "restitution." We review *de novo* issues of statutory construction. *Hirsch*, 237 Ariz. at 466, ¶ 38.

¶54        Stevenson argues that restitution should be "allowable only when it would be inequitable or unjust for a defendant to retain the actual benefit received without compensating the alleged victim." Because the Stevensons only received $2 million in commissions for the debenture transactions (and not the $19 million in principal paid to EquiAlt), he concludes that the Commission erred by imposing a $19 million restitution order against him.

¶55        The Commission responds that Stevenson conflates the concepts of restitution and disgorgement. *See Hirsch*, 237 Ariz. at 466, ¶ 41 ("[D]isgorgement is not precisely restitution. Disgorgement wrests ill-gotten gains from the hands of a wrongdoer . . . Disgorgement does not aim to compensate the victims of the wrongful acts, as restitution does."). It adds that restitution is "clearly defined" by the administrative code, which provides, in relevant part:

If restitution is ordered by the Commission,

1.        The amount payable as damages to each purchaser shall include:

a.        Cash equal to the fair market value of the consideration paid, determined as of the date such payment was originally paid by the buyer; together with

b.        Interest at a rate pursuant to A.R.S. § 44-1201 for the period from the date of the purchase payment to the date of repayment; less

c.        The amount of any principal, interest, or other distributions received on the security for the period from the date of purchase payment to the date of repayment.

A.A.C. R14-4-308(C). Thus, the Commission concluded that the $19 million restitution award was appropriate because it was based on the "fair market value of the consideration paid," *see id.*, not the unjust enrichment received by the Stevensons.

¶56        Stevenson acknowledges that *Hirsch*'s definitions of restitution and disgorgement contradict his position. Still, he argues that it "should not be the controlling authority in this case" or that this court should "[a]t the very least . . . narrow the decision." He made a similar

argument before the superior court. *See Ariz. Corp. Comm'n v. Stevenson*, Maricopa County Cause No. LC2022-000130-001 ("With commendable candor, Appellants acknowledge that their position is contrary to the holding of *Hirsch, supra.* They assert that they 'have a good faith challenge [to] the *Hirsch* opinion on this issue,' and that they raise it herein 'so that [they] may later bring such challenge before the Court of Appeals, and potentially the Supreme Court of Arizona, for further review so as to modify or overrule *Hirsch.*'").

¶57  He urges us to define "restitution" as it is used in *Murdock-Bryant Construction, Inc. v. Pearson*, 146 Ariz. 48, 53 (1985) (Restitution is "a flexible, equitable remedy available whenever the court finds that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to make compensation for benefits received.") (cleaned up). But his reliance on *Murdock* is unavailing. As the Commission points out, *Murdock* addressed restitution under equitable principles; it was not a case involving securities or the Commission's administrative code, and its restitution definition does not apply. *See Murdock*, 146 Ariz. 48; *see also* A.R.S. § 44-2032(1) (authorizing the Commission to impose "restitution *as prescribed by rules of the commission*" (emphasis added)). Because restitution "focuses on restoring the victim to a prior position," *Hirsch*, 237 Ariz. at 466, ¶ 40, we reject Stevenson's argument that the award violates constitutional protections against excessive fines.

¶58  The United States and Arizona Constitutions identically provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; Ariz. Const. art. 2, § 15. A "fine" is "a payment to a sovereign as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 327 (1998) (superseded by statute on other grounds). But a restitution order is not punitive as it aims to restore the victims to their prior positions. *See Hirsch*, 237 Ariz. at 466, ¶ 40. Thus, the restitution order cannot be an "excessive fine" because it is not a "fine."

¶59  Finally, Stevenson challenges the restitution order by arguing that A.R.S. § 44-2032(1) and A.A.C. R14-4-308(C)(1) are unconstitutionally vague. He contends that "[a] reasonable reader . . . would be completely unaware that restitution for the intermediary referral source could mean the entire amount paid to the third party, and not simply the amount that the referral source had received in connection with the referral."

**¶60** This argument is meritless. The code provides that "[t]he amount payable as damages to each purchaser shall include . . . [c]ash equal to the fair market value of the consideration paid." A.A.C. R14-4-308(C)(1)(a). Contrary to Stevenson's position, a reasonable reader would not "be completely unaware" of what an "intermediary referral source" would be liable to pay in restitution because, under the rule, the defendant's identity is irrelevant. The rule states that the restitution amount is the "consideration paid" by the victim. *Id.* Stevenson cannot claim that the rule is vague because it generally applies to defendants. Moreover, A.R.S. § 44-2032(1) authorizes the Commission to order "*any* person" that commits a securities violation within that chapter to pay restitution. (Emphasis added.)

**¶61** Stevenson has shown no error in the Commission's restitution order.

## E. The Commission's Imposition of Administrative Penalties Was Not Illegal, Arbitrary, Capricious, or an Abuse of Discretion.

**¶62** Stevenson challenges imposing administrative penalties under A.R.S. §§ 44-3296, 44-3201, and 44-2036. From the total penalty amount and the statutory maximum for each violation, he calculates that "[t]he Commission must therefore have found at least fifty violations." Still, he objects that the Commission "did not delineate" the actual number of violations or the penalty amount for each.

**¶63** But the Commission found that the Stevensons had sold at least 254 EquiAlt debentures, each violating A.R.S. § 44-1841. As the superior court noted, "therefore, the Commission could have imposed administrative penalties of up to $1,270,000.00 . . . . Appellants can hardly claim to be aggrieved by . . . the Commission's decision to impose penalties in an amount far lower than the amount authorized by statute[.]" We agree with the superior court's reasoning.

## ATTORNEY'S FEES

**¶64** Stevenson requests his costs and fees on appeal under A.R.S. §§ 12-341, 12-348(A)(2), and 41-1007. We decline the request because he did not prevail on the appeal.

## CONCLUSION

¶65        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    TM